IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Menders et. al.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>Loudoun County School Board,<br><br><br>　　　　　Defendant. | Case No. 1:21-cv-00669-AJT-TCB |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION TO PROCEED ANONYMOUSLY**

## INTRODUCTION

Anonymous litigation has become an accepted method of proceeding in appropriate cases, and this is a paradigm case for allowing Plaintiffs to sue anonymously. While the general presumption of openness in judicial proceedings applies to party anonymity, *see Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981), that presumption "operates only as a presumption and not as an absolute, unreviewable license to deny." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Rather, the rule is that anonymity may be permitted under appropriate circumstances. *Id.* This rule "recognizes that privacy or confidentiality concerns are sometimes sufficiently critical" such that anonymity is appropriate. *Id.* For the foregoing reasons, the Court should grant Plaintiffs' request to proceed anonymously.

In doing so, the Court should not lose sight of the Board's own attitude toward anonymity. In its brief opposing the preliminary injunction, the Board lists as one of the equities weighing in its favor that the bias incident reporting system "provid[es] an avenue for students to express concerns regarding sensitive issues anonymously in order to foster student engagement and dialog on solving those issues." ECF-17 at 20; *see id*. at 5 ("The bias reporting form at issue in this case is an online electronic form developed to allow students to anonymously share their experiences regarding issues of racism, injustice, and inequity."). In other words, the Board itself recognizes that anonymity creates the "safe space" necessary to raise sensitive issues, especially given the unique issues facing students. That is the very reason Plaintiffs seek to proceed anonymously here.

## I.  *James v. Jacobson* Weighs in Favor of Anonymity

The Board mistakenly asserts that none of the *James* factors weigh in favor of permitting the Doe Plaintiffs to proceed anonymously. ECF-17 at 3. Plaintiffs respectfully disagree. Rather, all five *James* factors weigh in favor of granting anonymity to the Doe Plaintiffs.

### A.  The first *James* factor weighs in favor of anonymity in this case because the case implicates sensitive and highly personal matters of Plaintiffs.

The first *James* factor considers whether the case implicates matters of a sensitive and highly personal nature. *James*, 6 F.3d at 238. The Board claims that Plaintiffs cannot successfully argue that they seek to preserve privacy in any sensitive or highly personal matter because this case does not implicate such matters. ECF-17 at 4. However, those are exactly the types of matters raised in this lawsuit. Critical race theory ("CRT") is just as controversial as religion or one's voting pattern. When one is a member of a minority religious belief in their community and decides to bring a lawsuit against a majority religious practice, being a named plaintiff can be awkward, alienating, and intimidating. *See, e.g., Doe 3 v. Elmbrook Sch. Dist.*, 658 F.3d 710 (7th Cir. 2011) (upholding anonymous litigation when minority religious beliefs were involved); *Doe v. Pittsylvania County*, 844 F. Supp. 2d 724, 735 (W.D. Va. 2012) (citing *id.* at 723: "Lawsuits involving religion can implicate deeply held beliefs and provoke intense emotional responses.") Plaintiffs are in a similar position: they possess a belief that, when disclosed, can have effects as minimal as awkwardness in public settings to as harmful as threats against them, their children, and their livelihood. *See* Pls.' Br. Supp. Mot. Prelim. Inj. at 8–9. It at minimum proves "intense emotional responses."

CRT is obviously currently a hot-button political topic. *See, e.g.,* Anthony Zurcher, *Critical race theory: the concept dividing the US*, BBC (July 21, 2021).[1] Political beliefs have

---

[1] https://www.bbc.com/news/world-us-canada-57908808.

long been recognized as highly sensitive and personal, just like religious beliefs. *United States v. Graham*, 796 F.3d 332, 347–48 (4th Cir. 2015), *vacated* 624 Fed. Appx. 75 (2015), quoting in part *United States v. Jones*, 565 U.S. 400, 416 (2012) (Sotomayor, J., concurring)) ("private facts about the individual, such as her 'political and religious beliefs, sexual habits, and so on.'"). In fact, the Supreme Court just recently reaffirmed the right to support beliefs anonymously. *See Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021). Plaintiffs' political beliefs are exactly the kind of personal and sensitive matters anonymity was meant to protect under *James*.

### B. The second *James* factor weighs in favor of anonymity in this case because Plaintiffs will face retaliatory physical or mental harm if their identities are revealed.

The second *James* factor considers whether identification poses a risk of retaliatory physical or mental harm to the requesting party or to innocent non-parties. *James*, 6 F.3d at 238. Anonymity is warranted to protect minor plaintiffs against the risk of violence from revelation of unpopular personal beliefs. *See id.* at 238–39 (citing *Stegall*, 653 F.2d at 185–86). Given the attacks already launched at anti-CRT parents and students, Plaintiffs will certainly face retaliation if their identities are revealed.

The Board mischaracterizes the activities of the pro-CRT Facebook group as "alleged." ECF-17 at 5. But the Board never indicates any of the news reports Plaintiffs relies on are wrong. The Board does not dispute that Beth Barts, a member of LCSB, posted that she is "'very concerned that the [anti-]CRT movement for lack of better word is gaining support.'" Luke Rosiak, *Teachers Compile List of Parents Who Question Racial Curriculum, Plot War on Them*, The DailyWire (Mar. 16, 2021).[2] She then wrote that she "hoped to 'call out statements and actions that undermine our stated plan to end systemic racism.'" *Id.* In response, a supporter of Barts posted a call to action which told prospective volunteers to gather lists of persons in charge

---

[2] https://www.dailywire.com/news/loudoun-teachers-target-parents-critical-race-theory-hacking.

of the anti-CRT movement, create fake online profiles to join anti-CRT groups and either collect information or hack into their websites and shut them down, and expose anti-CRT persons publicly. *Id.* Another person in the same group called specifically for investigations of anti-CRT activists' children's social media accounts. Luke Rosiak, *'Anti-Racists' Behind School Enemies List Now Gathering Info on Children as Top Prosecutor Joins In*, The Daily Wire (May 25, 2021).[3] Nothing about Plaintiffs' request for anonymity is based on hypothetical retaliations— the retaliatory efforts of both the Board members and their supporters are very real. The Board has gone as further as to share a post from the LCPS Minority Student Achievement Advisory Committee, which advises the Board, stating that they "will silence the opposition." Harold Hutchison, *'We Can & Will Silence the Opposition: Loudoun County Public Schools Committee Posts, Then Deletes, Call for Action Against Opponents*, Daily Caller (Mar. 28, 2021).[4]

Additionally, proponents of CRT successfully pressured crowdfunding platform GoFundMe to remove a fundraiser for P.A.C.T., a group fighting the adoption of CRT by LCPS. Alex Nester, *GoFundMe Yanks Page Run by Virginia Parents Fighting Woke Curriculum*, The Washington Free Beacon (Mar. 29, 2021);[5] Erik Burk, *GoFundMe Pulls Parents Against Critical Theory Page*, The Virginia Star (Mar. 27, 2021);[6] Chrissy Clark, *GoFundMe Caves to Activists, Pulls Fundraiser for Parent Group Fighting Critical Race Theory*, The Daily Wire (Mar. 31, 2021).[7]

---

[3] https://www.dailywire.com/news/loudoun-anti-racists-targeting-children-buta-biberaj.
[4] https://dailycaller.com/2021/03/28/silence-the-opposition-loudoun-county-public-schools-committee-posts-critical-race-theory/.
[5] https://freebeacon.com/campus/gofundme-deactivates-page-run-by-virginia-parents-fighting-woke-curriculum/
[6] https://thevirginiastar.com/2021/03/27/gofundme-pulls-parents-against-critical-theory-page/.
[7] https://www.dailywire.com/news/gofundme-caves-to-activists-pulls- fundraiser-for-parent-group-fighting-critical-race-theory.

Further news reports since this motion was filed confirm this reality for parents.[8]  A LCPS mom who attended several anti-CRT rallies was told by her boss that a flyer had been mailed to her workplace declaring her an "active racist" which was at odds with the employer's professed commitment to "diversity." "You should be ashamed to employ a known and active racist!" the flyer said. "Yes, what is wrong with her? She's a racist!!" Harold Hutchinson, *Anti-CRT Activist Says She Was Targeted in Harassment Campaign*, Daily Caller (July 12, 2021).[9]

Even if those activities were not specifically directed at Plaintiffs, they prove that retaliation for speaking out against CRT is highly likely, if not absolutely certain. The cancel culture in LCPS and Loudon County is so intense that it has been covered by the national news media. Covering the toxic environment for discussions about race and schools, Fox News published a headline reading: ""Virginia parents speaking out against critical race theory face retaliation / Fight over critical race theory pits neighbor against neighbor in affluent DC area school district." Matt Leach, FoxNews.com (June 3, 2021).[10] The risk of retaliation, physically and, especially, mentally and professionally against people like Plaintiffs is real and documented. This factor of *James* weighs heavily in favor of anonymity for exactly that reason.

### C. The third *James* factor weighs in favor of anonymity because the adult Doe Plaintiffs have minor children who are also plaintiffs in this case.

The third factor under *James* asks the ages of the persons whose privacy interests are sought to be protected. *James*, 6 F.3d at 238. Parents have been permitted to proceed anonymously when challenging school policies that would draw their minor children into highly controversial matters. *See, e.g., Elmbrook Sch. Dist.*, 658 F.3d at 721–24. Courts have held that the privacy interests of minor children can outweigh the public's interest in knowing the full

---

[8] Plaintiffs request that the Court treat this news article the same as it treats the news articles previously identified in its motion to take judicial notice, for the same reasons Plaintiffs identify in their reply on that motion.
[9] https://dailycaller.com/2021/07/12/virginia-anti-critical-race-theory-activists-targeted-harassment/.
[10] https://www.foxnews.com/us/virginia-parents-face-retaliation-speaking-out-against-crt.

names of minors and their parents. *McCutchen v. Becerra*, 2021 U.S. Dist. LEXIS 81416, *6 (D.D.C. April 23, 2021). This is because when a parent files a lawsuit on behalf of a child who wishes to stay anonymous, their "privacy interests are intractably intertwined." *Id.* at *7 (citing *J.W. v. Dist. of Columbia*, 2016 U.S. Dist. LEXIS 117538, *7 (D.D.C. Aug. 31, 2016)); *see also Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997) ("[F]ictious names are allowed when necessary to protect the privacy of children.").

The Board claims that the identities of the minor Doe Plaintiffs can be protected without granting anonymity to the adult Doe Plaintiffs. ECF-17 at 8. While the Federal Rules recognize and protect the privacy of minors by requiring parties to identify minors by their initials in court filings, "[t]his protection would like be 'eviscerated' if a parent filing on behalf of her child was not also permitted to remain anonymous." *T.A. v. Cty. of Del.*, 2019 U.S. Dist. LEXIS 42003 (E.D. Pa. March 14, 2019) (quoting *D.M. v. Cty. of Berks*, 929 F. Supp 2d 390, 402 (E.D. Pa. 2013)); *accord S.F. v. Archer Daniels Midland Co.*, 594 F. App'x 11, 12 n.1 (2d Cir. 2014). Requiring the adult Doe Plaintiffs to identify themselves would necessarily expose the identities of their minor children, the minor Doe Plaintiffs. *Elmbrook Sch. Dist.*, 658 F.3d at 724. Because protecting the anonymity of the minor Doe Plaintiffs is crucial given the sensitive issues raised by this case, the adult Doe Plaintiffs must be granted anonymity, and the age of those whose privacy is sought to be protected—mostly the minors'—is middle and high school student age.

**D.  The fourth *James* factor weighs in favor of anonymity in this case because the Board is a governmental entity.**

The fourth *James* factor asks whether the action is against a governmental or private party. 6 F.3d at 238. Courts are "less likely to grant a plaintiff permission to proceed anonymously when the plaintiff sues a private individual than when the action is against a governmental entity[.]" *Doe 1 v. Merten*, 219 F.R.D. 387, 394 (E.D. Va. 2004); *see also S.*

*Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (denying request to proceed anonymously in a suit against a private party). The reason for this is a lawsuit "challenging the constitutional validity of government activity generally 'involves no injury to the Government's reputation,' while an action against a private party can result in damage to the defendant's reputation as well as economic harm." *Merten*, 219 F.R.D. at 394 (quoting *Wynne & Jaffe*, 599 F.2d at 713). The *James* court recognized that anonymity is less appropriate when plaintiffs in a civil action seek compensatory damages, but that it was doubtful that a court would have thought a governmental-entity defendant would be subject to the same prejudice as a private defendant by permitting anonymity. *James*, 6 F.3d at 239 n.3. The Board is a government entity, and while the members of the Board may have their pride harmed by this lawsuit the government itself is not facing injury to reputation or economic interest.

Another concern regarding anonymity is the public interest. *Pub. Citizen*, 749 F.3d at 273–74. However, when the named defendant is a government entity the public interest is not in the identities of the plaintiffs, but rather the legal outcome of the action. It does not matter to the general public who is bringing this action, but rather the government actions or policies being challenged by the action. As previously mentioned, CRT is an extremely sensitive and public issue. Exposing the identity of Plaintiffs does not add to legal issues in dispute surrounding the Board's actions. The lawsuit speaks for itself without dragging the personal information of Plaintiffs unnecessarily into the action.

### E. The fifth *James* factor weighs in favor of anonymity in this case because the identities of Doe Plaintiffs are irrelevant to the Board's defense.

The fifth *James* factor consider the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously. 6 F.3d at 238. This case presents purely legal

questions, so the Board's defense need not rest on the identities of Plaintiffs and the Board is not prejudiced by the anonymity of Plaintiffs.

The Board asserts that anonymity is unfair because without knowing Plaintiffs' identity the Board cannot assess whether Plaintiffs have standing. ECF-17 at 10–11. Using a pseudonym for anonymity has not rendered courts unable to assess standing in the past. Perhaps most famously is the accepted standing of the plaintiff in *Roe v. Wade*, 410 U.S. 113 (1973). *Roe v. Wade* established "that, despite her pseudonym, the Court could accept as true" "Mary Doe's existence and her pregnant state[;] … that the constitutional issue is substantial; that the interim termination of Doe's…pregnanc[y]…ha[d] not rendered the case moot; and that Doe present[ed] a justiciable controversy and ha[d] standing to maintain the action." *Doe v. Bolton*, 410 U.S. 179, 187 (1973).

The Court can accept that the Doe Plaintiffs here have standing. Plaintiff Jane Doe #1 swears that she is the parent of three LCPS students who are subject to LCSB's policies challenged in this action. Jane Doe 1 Decl. ¶¶3, 6–7; App. at 135. Plaintiff Jane Doe #2 swears she is the parent of a middle school student who is subject to policies challenged in this case, too. Jane Doe 2 Decl. ¶¶3, 6–7; App. at 138. Plaintiff Jane Doe #3 swears she is also the parent of a middle school student subject to the challenged policies. Jane Doe 3 Decl. ¶¶3, 6–7; App. at 141. *Roe* and *Bolton* permit this Court to accept those assertions as true, despite the request for anonymity. All Plaintiffs here are challenging public school policies that discriminate on the basis of race, discriminate on the basis of viewpoint, and chill protected speech. Pls.' Br. Supp. Mot. Prelim. Inj. at 10–11, 15, 21. These are substantial constitutional issues. But they are not unique to Plaintiffs; they could be any parent of a middle or high school student in LCPS. And Plaintiffs have already offered to answer written interrogatories through counsel if necessary.

ECF-7-1 at 15, n.25. Therefore, all Plaintiffs, including the Doe Plaintiffs, present a justiciable controversy and have standing to maintain this action, anonymously.

## II. Other Factors Weigh in Favor of Anonymity, Too

The Board mistakenly relies on the five *James* factors as the *only* factors to consider when assessing whether to permit party anonymity. ECF No. 15 at 2–3. However, the Fourth Circuit identified those five factors as the ones that had "relevance to th[at] case[,]" not as the only factors to consider in exclusion to all others. *James*, 6 F.3d at 238; *see also Co. Doe v. Pub. Citizen*, 749 F.3d 246, 273 (4th Cir. 2014) (calling the *James* factors "nonexclusive factors for district courts to consider"). The *James* court recognized that there are not many cases dealing with requests for party anonymity. *Id.* In determining the relevant factors for its decision, the court looked at both trial and appellate level cases that had previously wrestled with the issue. *Id.* That is to say that the five *James* factors are not a limited list through which the court must check, one at a time, to ensure all are met, but rather a general guideline for the things a court should consider and weigh.

Federal courts frame the inquiry as to whether a plaintiff may proceed anonymously as "a balancing test that weighs the plaintiff's need for anonymity against countervailing interests in full disclosure," and have identified a variety of factors to consider in deciding whether to allow a plaintiff to sue anonymously. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (surveying caselaw). One factor other courts have considered when deciding a motion to proceed anonymously is "whether the party seeking to sue pseudonymously has illegitimate ulterior motives." *Doe v. Megless*, 654 F.3d 404, 409 (3d Cir. 2011) (citing a test set forth in *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467 (E.D. Pa. 1997)). Plaintiffs here have no ulterior motives, let alone illegitimate ones, for proceeding anonymously. As previously

mentioned, this is a purely legal case. Plaintiffs' motives for anonymity are simply to protect themselves and their children from retaliation. *See* Jane Doe 1 Decl. ¶ 14, App. at 137; Jane Doe 2 Decl. ¶ 14, App. at 140; and Jane Doe 2 Decl. ¶ 14, App. at 143.

Another factor considered by courts is whether allowing the litigant to proceed anonymously will harm the resolution of the claims on their merits. *See Del. Valley Aesthetics, PLLC v. Does,* No. 20-0456, 2021 U.S. Dist. LEXIS 122257, at *16 (E.D. Pa. June 30, 2021); *Doe v. United Behav. Health*, No. 10-5192, 2010 U.S. Dist. LEXIS 131117, at *4 (E.D. Pa. Dec. 10, 2010); *Doe v. Megless*, No. 10-1008, 2010 U.S. Dist. LEXIS 79098, 2010 WL 3076246, at *4 (E.D. Pa. Aug. 5, 2010) (*Megless II*), *aff'd,* 654 F.3d 404 (3d Cir. 2011). Here, there is no implication by the Board that forcing Plaintiffs to identify themselves will lead to a different judicial outcome. Rather, there is a risk of Doe Plaintiffs withdrawing, losing access to their day in court, and not having their claims resolved on the merits if forced to identify themselves.

## CONCLUSION

In Loudoun County, CRT debates have turned hostile, personal, and damaging. Regardless of whether the Court notices the newspaper articles, this is one fact that is well-known across eastern Virginia. This lawsuit challenges the policies of a governmental entity based on constitutional grounds. The identities of Plaintiffs are unnecessary for a fair adjudication of the issues raised, and identifying Plaintiffs will only further the toxic public discourse surrounding CRT in Loudoun County and harm Plaintiffs who simply wish to enjoy their protected, constitutional rights. The five factors in *James* weigh heavily in support of granting anonymity.

Plaintiffs ask this Court to grant their motion to proceed anonymously.

Dated: July 23, 2021       Respectfully submitted,

               /s/ Jeffrey D. Jennings
               Jeffrey D. Jennings (VSB No. 87667)
               Daniel R. Suhr (admitted *pro hac vice*)
               Liberty Justice Center
               141 W. Jackson Blvd., Suite 1065
               Chicago, Illinois 60604
               Telephone: (312) 263-7668
               Facsimile: (312) 263-7702
               jjennings@libertyjusticecenter.org
               dsuhr@libertyjusticecenter.org

               *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2021, a copy of the foregoing was filed with this Court's electronic filing system, which will serve a copy on all the parties.

DATED: July 23, 2021 /s/ Jeffrey D. Jennings
Jeffrey D. Jennings (VSB No. 87667)
Liberty Justice Center
141 W. Jackson Blvd., Suite 1065
Chicago, Illinois 60604
Telephone (312) 263-7668
Facsimile (312) 263-7702
jjennings@libertyjusticecenter.org

*Attorneys for Plaintiffs*