**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| PATTI HIDALGO MENDERS, ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-669 |
| | ) |
| LOUDOUN COUNTY SCHOOL BOARD, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF
<u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

Defendant Loudoun County School Board ("School Board") states as follows in support of its Motion to Dismiss Plaintiff's First Amended Complaint.

**INTRODUCTION**

This case is about the constitutionality of two related programs that have been implemented by middle and high schools in the Loudoun County school division: the Student Equity Ambassador ("SEA") program and a bias reporting form. In their First Amended Complaint ("Complaint" or "Compl."), Plaintiffs assert on behalf of their minor children five counts. In Counts I, II, and III, Plaintiffs argue that the SEA program violates the Fourteenth Amendment's guarantee of equal protection because it discriminates on the basis of race (Count I) and viewpoint (Count III), as well as that its supposed viewpoint discrimination violates the First Amendment's guarantee of freedom of speech (Count II). In Counts IV and V, Plaintiffs argue that the bias reporting form violates the First and Fourteenth Amendments because it chills speech through content-based speech restrictions (Count IV) and through viewpoint discrimination (Count V).

1

For the reasons set forth below, Plaintiffs fail to allege facts sufficient to make out a claim for relief on Counts I, II, and III, and they lack standing to assert Counts IV and V. Accordingly, Plaintiffs' Complaint should be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

The School Board commissioned an equity assessment in June 2019 to address racial inequality in the school division. Compl., ¶ 22, Ex. A at 3. Among other conclusions, the assessment indicated that Black/African-American, Latinx, and Muslim students were particularly affected by racial insults or slurs, or even racially motivated violent actions. See Compl., ¶ 22, Ex. A at 3–4. In an effort to remedy these issues, the School Board developed an "Action Plan to Combat Systemic Racism" in June 2020. Compl., ¶ 24. The action plan included developing the SEA program to amplify the voices of students and to emphasize student voice in education more generally. Compl., ¶ 29–30.

Under the SEA program, two or three students from each middle and high school in the division are selected by each school principal to participate. Compl., ¶ 28. When more than two or three students show interest or are nominated, students are selected based on particular attributes.[1] Compl., ¶ 31, Ex. E at 3. These attributes include being able to demonstrate honesty, respect, and sensitivity, as well as having a passion for social justice and being willing to serve. Compl., ¶ 43, Ex. E at 3. The SEAs participate in "Share, Speak-up, Speak-out" meetings, in which the SEAs reviewed stories and experiences submitted by students in order to amplify the voices of students of Color and those who have experienced or witnessed injustices, marginalization, or discrimination. Compl., ¶¶ 29, 31, Ex. E at 2.

---

[1] An initial version of the SEA program guidelines provided that the opportunity was open to all Students of Color, though this was deleted in the version of the guidelines that was actually used. See Compl., ¶¶ 33, 38–39, 45.

2

In order to collect student experiences to discuss at the Share, Speak-up, Speak-out meetings, a bias incident reporting form ("bias reporting form") was distributed to parents and students. Compl., ¶ 47. The form includes a section for the person filling it out to indicate the type of bias incident being reported and to explain the incident. Compl., ¶ 49, Ex. H. As indicated on the form, the primary purpose of the form is to capture student stories in an anonymous matter. Compl., ¶ 48, Ex. H. Only if the student provides his or her name and specifically requests will the form be forwarded to the student's school administrators for investigation of the incident. Compl., ¶ 48, Ex. H. Students are directed to "still report discipline incidents to a trusted adult or members of the administrative team." Compl., ¶ 56.

Plaintiffs filed their original complaint (ECF No. 1) in June 2021, around the end of the 2020-2021 school year. Plaintiffs also filed a motion for a preliminary injunction (ECF No. 9), which the Court denied following briefing and a hearing on the matter (ECF No. 24). In apparent response to the School Board's motion to dismiss the original complaint (ECF No. 25), Plaintiffs filed this Complaint as a matter of course, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. Compl., ¶ 1.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). The mere possibility a plaintiff may have a cognizable claim is insufficient; well-pled allegations must nudge the claim "across the line from conceivable to plausible" to survive a motion to dismiss. Id. at 570. A "claim has facial plausibility when the pleaded factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

While "[t]he court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take facts asserted therein as true," it does not need to "accept the legal conclusions, inferences, or arguments that are drawn from the facts." Kelley v. United States, 580 F. Supp. 2d 490, 492 (E.D. Va. 2008) (citation omitted). "Naked allegations" that consist of a "formulaic recitation of the necessary elements [] are no more than conclusions and therefore do not suffice." McCleary-Evans v. Maryland Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015) (quoting Iqbal, 556 U.S. at 678–79) (internal quotation marks omitted).

While the court does not ordinarily consider documents outside the complaint when ruling on a motion to dismiss, the Fourth Circuit has recognized that "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." Witthohn v. Fed. Ins. Co., 164 F. Appx. 395, 396 (4th Cir. 2006); see also Gasner v. Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995)); Elitharp-Martin v. Pulaski Cnty. Sch. Bd., 62 F. Supp. 3d 515, 518 (W.D. Va. 2014) ("Conversion [to summary judgment] is not required [] when the court considers only exhibits attached to the complaint, or documents that are integral to the complaint or incorporated by reference, as long as the authenticity of those documents in not in dispute.") (quoting Witthohn, 164 F. Appx. at 396).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may seek dismissal for lack of subject matter jurisdiction. A.W. ex rel. Wilson v. Fairfax County Sch. Bd., 548 F. Supp. 2d 219, 221 (E.D. Va. 2008). The plaintiff bears the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. U.S., 945 F.2d 765,

768 (4th Cir. 1991). No presumption of "truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." A.W. ex rel. Wilson, 548 F. Supp. 2d at 221. The court should grant a Rule 12(b)(1) motion to dismiss if the material jurisdictional facts are known, and the moving party is entitled to prevail as a matter of law. Richmond, Fredericksburg & Potomac R. Co., 945 F.2d at 768.

## ARGUMENT

**I.  Plaintiffs' claims regarding the SEA program (Counts I, II, and III) must be dismissed.**

As explained below, none of Plaintiffs' claims related to the SEA program can withstand a motion to dismiss. Accordingly, Plaintiffs' request for declaratory and injunctive relief preventing the School Board from operating the SEA program must be denied.

**A.  Plaintiffs have not shown a race-based equal protection violation by the SEA program.**

In Count I, Plaintiffs assert a race-based Equal Protection claim pursuant to 42 U.S.C. § 1983. Specifically, Plaintiffs claim that the SEA program, which they concede does not constitute an explicit racial classification, Compl., ¶¶ 38–39, nevertheless discriminates against white students. In the absence of an explicit racial classification, an Equal Protection plaintiff must allege facts to demonstrate that the government action at issue was both (1) established with discriminatory intent and (2) has an actual discriminatory impact. See N. Carolina State Conf. of the NAACP v. Raymond, 981 F.3d 295, 302 (4th Cir. 2020); Monroe v. City of Charlottesville, 579 F.3d 380, 388 (4th Cir. 2009). Plaintiffs' race-based Equal Protection claim fails because Plaintiffs have not alleged facts to sufficient to demonstrate either required element.

5

### 1. The Complaint does not allege facts that show the SEA program was established with discriminatory intent.

To survive a motion to dismiss, a plaintiff must plausibly plead that an invidious discriminatory purpose was a motivating factor in the challenged decision. Nance v. City of Albemarle, N. Carolina, No. 1:19-cv-41, 2021 WL 602942, at *10 (M.D.N.C. Feb. 16, 2021). In determining whether racial discrimination was a "substantial or motivating factor," courts consider factors the Supreme Court identified in Vill. of Arlington Heights v. Metro. Hous. Dev. Corp, 429 U.S. 252 (1977). These factors include

> (1) evidence of a "consistent pattern" of actions by the decisionmaking body disparately impacting members of a particular class of persons; (2) historical background of the decision, which may take into account any history of discrimination by the decisionmaking body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4) contemporary statements by decisionmakers on the record or in minutes of their meetings.

Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 819 (4th Cir. 1995) (citing Arlington Heights, 429 U.S. at 266-68, 97 S.Ct. 555).

When the Arlington Heights factors are applied to the facts alleged in the Complaint, it is clear that Plaintiffs have not alleged a plausible claim. There is no allegation anywhere in Plaintiffs' Complaint that the SEA program was established with the intent to discriminate against white students. At most, Plaintiffs allege that the "original" SEA program materials indicated that the "opportunity is open to all students of Color," Compl., ¶¶ 32–34, but Plaintiffs also concede that the SEA program materials were promptly revised to eliminate any limitation on students who were eligible, Compl., ¶¶ 38–39, and that LCPS administrators communicated that "all students (white or otherwise) are more than welcome to potentially serve as ambassadors." Compl., ¶ 41. While this sequence of events may be considered by the Court, the

6

Court also considers the overall historical background which, as pled in the Complaint, includes the fact that the SEA program was adopted as part of LCPS's "Action Plan to Combat Systemic Racism," Compl., ¶ 28, and that the purposes of the SEA program include "amplify[ing] the voices of students of color," Compl., ¶ 29 and " recogniz[ing] students who have been marginalized." Compl., ¶ 42.  The facts pled, including the contents of the documents attached to Plaintiffs' Complaint, demonstrate that the purpose of the SEA program was to combat and remedy discrimination, which does not demonstrate an intent to discriminate against white students.  See Order Denying Plaintiffs' Motion for Preliminary Injunction ("Order") (ECF No. 24), at 11–13.

For the reasons stated above, the events leading up to the adoption of the SEA program, as alleged in the Plaintiffs' Complaint, do not evidence an intent to discriminate against white students.  Accordingly, Count I must be dismissed.

### 2. The Complaint does not allege facts that show the SEA program has an actual discriminatory impact on white students.

Count I must also be dismissed for the additional and independent reason that Plaintiffs have not alleged facts to demonstrate that the SEA program has a discriminatory impact on white students.  To allege a discriminatory impact sufficient to survive a motion to dismiss, a plaintiff must plead facts rather than mere conclusions.  Hanover Country Unit of the NAACP v. Hanover County, 461 F. Supp. 3d 280, 298 (E.D. Va. 2020).  In Hanover County, the Court dismissed the plaintiff's Equal Protection claim because it relied solely on numerous but conclusory assertions of discriminatory impact, such as that the challenged school and team names "discriminate[] against African American students on [their] face," "discriminatorily impact African American members of the NAACP by using a government stamp of approval to honor the Confederacy," and "treat African American students, including members of the NAACP, differently because the

names constructively prevent them from attending [the schools]." Id. at 297–98. The Court held that such statements "are entirely conclusory" and insufficient to "state a claim to relief that is plausible on its face." Id. at 298.

As in Hanover County, Plaintiffs here have done no more than assert, in a conclusory manner, that "Plaintiffs' children are being unlawfully discriminated against on account of their race." Compl., ¶ 73. Such an allegation is insufficient to survive dismissal. Indeed, that claim is belied by other facts alleged or that are tellingly absent. Plaintiffs allege that seventeen percent of the SEAs identified as "white only," Compl., ¶ 45, and Plaintiffs allege no facts that address how this representation relates to the demographics of the pool of students who applied or were considered.

Because Plaintiffs have not alleged facts that demonstrate either of the two elements necessary to state an Equal Protection claim in the absence of an explicit racial classification— either failure being alone sufficient grounds to dismiss the claim—Count I must be dismissed.

### B. Plaintiffs have not shown a First Amendment violation on the basis of viewpoint discrimination.

In Count II, Plaintiffs assert a First Amendment claim that the SEA program has a viewpoint requirement to participate that results in unconstitutional viewpoint discrimination. Viewpoint discrimination is "discrimination in which the government targets not subject matter, but particular views taken by speakers on a subject." Rosenberger v. Rectors & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995). Plaintiffs' viewpoint discrimination claim fails because Plaintiffs have not alleged any viewpoint that has been excluded. Rather, the point of the SEA program is to perform a certain action, i.e., "amplifying the voice of Students of Color," which makes student participation in the program about how the student spends her time and her willingness to help other students. Nothing in the selection criteria says that students with

particular views are excluded from participation, or indeed that any particular viewpoint is required for the program. The selection criteria merely invite a recommender to consider attributes the student possesses that would make her successful in the program when recommending her. These include having "a passion for social justice," but also include, for example, being honest, sympathetic, sensitive, and having the respect of their peers. Compl., Ex. E, at 3. In other words, Plaintiffs take issue with a direction that essentially says, "consider recommending a student who has a passion for social justice to be an SEA." Plaintiffs' argument that mentioning "a passion for social justice" as an attribute to consider precludes individuals with particular viewpoints is therefore no different than saying that the selection criteria discriminate against those who do not believe in being honest, sympathetic, or sensitive. There is simply no viewpoint discrimination implicated in the SEA selection criteria.

Even if the reference to "a passion for social justice" in the selection criteria did implicate particular viewpoints, which it does not,[2] Plaintiffs still have not demonstrated any cognizable claim for viewpoint discrimination based on the selection criteria. The selection criteria for the SEA program are a function of the limited number of spots available to students at each school and are part of the competitive process through which these limited number of spots are allocated among interested students. Compl., ¶ 28, 31, Ex. E, at 3. The Fourth Circuit has held that the Free Speech Clause does not apply here, where a school is providing a public benefit that is allocated to a limited number of persons through a competitive process. <u>Buxton v. Kurtinitis</u>, 862 F.3d 423, 429–30 (4th Cir. 2017). In such circumstances, the government may take viewpoints expressed into consideration, and make determinations based on those viewpoints,

---

[2] This Court recognized previously that "a passion for social justice" does not implicate a particular substantive viewpoint. Order at 16–17.

when deciding who is awarded a spot. Id. at 430. Plaintiffs' qualms with the requirements of a competitive selection process are properly addressed, if valid, through an Equal Protection claim, which Plaintiffs have asserted in Count III, rather than through the Free Speech Clause. See Id. at 431.

### C. Plaintiffs have not shown an Equal Protection violation on the basis of viewpoint discrimination.

In Count III, Plaintiffs assert that the SEA program's viewpoint requirement violates the Equal Protection clause. Plaintiffs acknowledge, as they must, that the SEA program is a nonpublic forum. Compl., ¶ 85. Because it is nonpublic, Plaintiffs do not have a fundamental right to access the forum, and so the evaluation criteria for the SEAs "need only rationally further a legitimate state purpose." See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 54 (1983). Accordingly, Plaintiffs must allege facts sufficient to overcome the strong presumption of rationality that applies to the selection criteria. See Giarratano v. Johnson, 521 F.3d 298, 304–05 (4th Cir. 2008); Heller v. Doe by Doe, 509 U.S. 312, 319 (1993) ("[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity."). In particular, Plaintiffs "bear[] the burden to negate every conceivable basis which might support the legislation," and a classification "does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." Giarratano, 521 F.3d at 303.

Here, Plaintiffs allege that Defendant's purposes in connection with the SEA program include "dismantling systemic racism," Compl., ¶ 3; rejecting "racist and other hateful behavior and language," Compl., ¶ 25; emphasizing "student voice" in education, Compl., ¶ 30; and "amplify[ing] the voices of students of color," Compl., ¶ 36. Plaintiffs do not allege that Defendant's purpose is illegitimate, nor do Plaintiffs allege any facts that show the SEA program

10

does not rationally further these purposes. Plaintiffs have not even alleged that Defendant has discouraged their viewpoints. Plaintiffs Complaint falls far short of meeting its burden to "negate every conceivable basis" which might support the SEA program. See Giarratano, 521 F.3d at 303.

Because Plaintiffs' conclusory allegations about the lack of a rational relationship between Defendant's SEA Program and any legitimate state interest is insufficient to plausibly state a claim for relief in light of the strong presumption in favor of the SEA Program's rationality, and the readily apparent justification for the SEA program, Plaintiffs' claim should be dismissed. See id. at 304.

**II.     Plaintiffs' claims regarding the bias reporting form (Counts IV and V) must be dismissed because they lack standing to bring such claims.**

In Counts IV and V, Plaintiffs appear to be making a facial challenge to the bias reporting form on First Amendment grounds. Plaintiffs must first demonstrate they have standing to make a First Amendment overbreadth claim. See Abbott v. Pastides, 900 F.3d 160, 176 (4th Cir. 2018). They must do so by showing either (1) "that they intend to engage in conduct at least arguably protected by the First Amendment but also proscribed by the policy they wish to challenge, and that there is a credible threat that the policy will be enforced against them when they do so," or (2) "they may refrain from exposing themselves to sanctions under the policy, instead making a sufficient showing of self-censorship—establishing, that is, a chilling effect on their free expression that is objectively reasonable." Id. (internal quotation marks omitted). "Either way, a credible threat of enforcement is critical." Id. Because Plaintiffs cannot

demonstrate a credible threat of enforcement, they cannot show that their First Amendment rights are chilled, and so lack standing to bring this claim.[3]

Plaintiffs do not allege any facts that show there is a credible threat that they will suffer any consequences as a result of the bias reporting form. Plaintiffs do not allege that there have been any students disciplined or even investigated as a result of the bias reporting forms. See Compl., generally; see also, Abbott, 900 F.3d at 176 ("The most obvious way to demonstrate a credible threat of enforcement in the future, of course, is an enforcement action in the past."). Nor do Plaintiffs allege that any investigation conducted by school officials as a result of a bias reporting form submission itself poses some significant burden, independent of any ultimate consequence. See Abbott, 900 F.3d at 179.

Indeed, Plaintiffs' baseless assertion that the bias reporting form "functions alongside and in conjunction with the disciplinary system," Compl., ¶ 56, is contradicted by their own allegations and the documents attached to their Complaint. Plaintiffs allege that the Equity Office directs students to "still report discipline incidents to a trusted adult or members of the administrative team"—not to the Equity Office. Compl., ¶ 56. Plaintiffs also acknowledge that investigations of bias incidents occur when the student specifically requests and chooses to no longer report anonymously. Compl., ¶ 48, Ex. H. The bias reporting form notifies students that the incident would be "investigated by the administrators at your school" and that "the Office of Equity [will] submit your name to your school for investigation." See Compl., Ex. H. The School Board's Action Plan to Combat Systemic Racism specifically notes that the bias

---

[3] In addition, Plaintiffs have not demonstrated that they intend to engage in any conduct arguably protected by the First Amendment as they have only vaguely noted that they "wish to speak out on . . . other controversial political issues" and not identified any particular conduct they plan to engage in. See Compl., ¶ 62. A particularized showing of an intended activity in the face of a credible threat of enforcement is required. See Abbott, 900 F.3d at 171.

12

reporting form "may inform, not supersede, LCPS policies and protocols for addressing racial incidents." See Compl., Ex B at 18. Similarly, Plaintiffs' alleged fears of "public disclosure" arising out of the bias reporting form are baseless, see Compl., ¶ 65, as there are no allegations that anything related to the bias reporting form, let alone non-existent disciplinary consequences, will be publicly disclosed. At best, Plaintiffs allege that the SEAs will "judge" them, Compl., ¶¶ 2, 111, but there are no allegations that demonstrate in what context, whether such judgment is on behalf of the School Board, or whether there are any consequences for such judgment.

In sum, Plaintiffs' allegations are insufficient to demonstrate a credible threat of enforcement. As this Court noted previously, "the prospect that protected speech could generate a complaint that might be reviewed by school authorities, with no other consequences, is simply not enough to establish standing." Order at 24. Because Plaintiffs' allegations do not rise above this level, Plaintiffs lack standing to bring claims based on the bias reporting system.

## CONCLUSION

For the reasons stated above, Plaintiffs have not alleged facts to state a claim for which relief can be granted as to their claims regarding the SEA program, and they lack standing to bring their claims regarding the bias reporting system. Defendant Loudoun County School Board therefore requests that the Court dismiss Plaintiffs' claims with prejudice and award it such further relief as the Court deems appropriate.

Respectfully submitted,

LOUDOUN COUNTY SCHOOL BOARD

By Counsel

/s/ Andrew P. Selman
Stacy L. Haney, Esq. (VSB 71054)
Andrew P. Selman, Esq. (VSB 91060)
HANEY PHINYOWATTANACHIP PLLC
11 S. 12th Street, Suite 100B
Richmond, VA 23219
Tel:  (804) 500-0310
Fax:  (804) 500-0309
shaney@haneyphinyo.com
aselman@haneyphinyo.com

Counsel for Loudoun County School Board

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of September, 2021, I have electronically filed the foregoing using the CM/ECF system, which will automatically send email notification of such filing to counsel of record as follows:

Jeffrey D. Jennings
Daniel R. Suhr
Reilly Stephens
Liberty Justice Center
208 South LaSalle Street, Suite 1690
Chicago, IL 60603
Tel: (312) 263-7668
Fax: (312) 263-7702
jjennings@libertyjusticecenter.org
dsuhr@libertyjusticecenter.org
rstephens@libertyjusticecenter.org

/s/ Andrew P. Selman
Stacy L. Haney, Esq. (VSB 71054)
Andrew P. Selman, Esq. (VSB 91060)
HANEY PHINYOWATTANACHIP PLLC
11 S. 12th Street, Suite 100B
Richmond, VA 23219
Tel:  (804) 500-0310
Fax:  (804) 500-0309
shaney@haneyphinyo.com
aselman@haneyphinyo.com

Counsel for Loudoun County School Board