**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| PATTI H. MENDERS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-669-AJT-TCB |
| | ) | |
| LOUDOUN COUNTY SCHOOL BOARD, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF
<u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

Defendant Loudoun County School Board ("School Board") states as follows for its reply to the Response of Plaintiffs in Opposition to Defendant's Motion to Dismiss First Amended Complaint ("Opposition" or "Opp.").

**INTRODUCTION**

In their First Amended Complaint ("Complaint" or "Compl."), Plaintiffs argue that the Student Equity Ambassadors ("SEA") program and the bias reporting form implemented in Loudoun County Public Schools ("LCPS") are unconstitutional. As the School Board explained in its Memorandum in Support of Motion to Dismiss First Amended Complaint ("Memorandum" or "Mem."), Plaintiffs have not alleged facts sufficient to support any of their claims as to the SEA program and do not have standing to bring any of their claims as to the bias reporting form. Although Plaintiffs in their Opposition attempt an impassioned defense of their claims by invoking generally the ideals of the Constitution, the substance of their Opposition is lacking and generally fails to squarely engage the School Board's arguments or address the allegations lacking in the Complaint. For the reasons stated below, the School Board's motion to dismiss should be granted and Plaintiffs' claims dismissed.

1

# ARGUMENT

**I.      Plaintiffs have not alleged facts to support an Equal Protection claim based on racial discrimination.**

In Count I of the Complaint, Plaintiffs assert that the SEA program violates the Fourteenth Amendment's guarantee of equal protection because it discriminates based on race. See Compl., ¶¶ 67–81. Specifically, Plaintiffs challenge the selection criteria for the SEA program, as Plaintiffs do not appear to challenge the existence of the SEA program itself. See Opp. at 7–14; Complaint, generally. To state an Equal Protection claim on the basis of racial discrimination, Plaintiffs must allege facts that show both that the SEA program (1) was established with discriminatory intent and (2) has an actual discriminatory impact. Mem. at 5 (citing N. Carolina State Conf. of the NAACP v. Raymond, 981 F.3d 295, 302 (4th Cir. 2020); Monroe v. City of Charlottesville, 579 F.3d 380, 388 (4th Cir. 2009)). Accordingly, if the Court determines that either element is not adequately alleged in the Complaint, the Court should dismiss Count I. As the School Board explained in its Memorandum, neither required element is adequately alleged in Plaintiffs' Complaint, so Count I must be dismissed. Mem. at 5–8.

**A.      Plaintiffs have not shown that the SEA program was established with discriminatory intent.**

Plaintiffs' Complaint does not allege facts to show that the SEA program was established with invidious discriminatory intent. See Mem. at 6–7. Because Plaintiffs concede (as they must) that the SEA program is open to all students regardless of race, Compl. ¶¶ 39–41, Plaintiffs attempt to rely on the history, sequence of events leading up to the program, and the "legislative history" of the program—i.e., the Arlington Heights factors—to demonstrate the required invidious discriminatory intent. Opp. at 8 (citing N.C. State Conference of the NAACP v. McCrory, 831 F.3d 204, 220–21 (4th Cir. 2016) (citing Vill. of Arlington Heights v. Metro.

Hous. Dev. Corp., 429 U.S. 252 (1977))). Despite invoking the Arlington Heights factors, however, Plaintiffs point to no allegations in the Complaint that establish any of these considerations that might demonstrate discriminatory intent. Plaintiffs instead focus on the purpose of the program to "amplify the voice of Students of Color" in an effort to remedy systemic racism in the school division and suggest this alone shows invidious discriminatory intent. See Opp. at 8–10. Yet the purpose and focus of the SEA program does not support the conclusion that Plaintiffs' children were always intended to be excluded from participating in the program on account of their race, which is Plaintiffs' claim.

Plaintiffs inaccurately frame the School Board's, and the Court's, recognition of this purpose as an attempt to circumvent the application of strict scrutiny to the SEA program. See Opp. at 11. Although there is no dispute that any racial classifications are subject to strict scrutiny, Plaintiffs' argument puts the cart before the horse because the reason behind employing a racial classification only matters if a racial classification is actually applied. But the SEA program selection criteria are not a racial classification. So, Plaintiffs' arguments about the application of strict scrutiny to any instance of racial classification do not address whether there is invidious discriminatory intent underlying the SEA program in the first instance as determined through the Arlington Heights analysis.

The cases Plaintiffs cite in their Opposition on pages 12 and 13[1] to show that "[p]referring one race over the other for a government benefit can only be justified by a

---

[1] Plaintiffs also cite to a Louisiana Supreme Court case for the proposition that discrimination in favor of one racial group is necessarily discrimination against the non-favored race. Opp. at 12. This proposition does not support Plaintiffs here because the relevant portion of the opinion is based on application of the Louisiana Constitution, which goes "above and beyond" the protections of the U.S. Constitution in terms of protecting against racial classifications; such classifications are not permitted for any reason, so strict scrutiny is not even applicable. See La.

compelling state interest" do not therefore aid Plaintiff. Each of these cases deal with an explicit racial classification to determine who was excluded from participating in a government program (benefits provided by the Small Business Administration). As there is no preference of one race over the other in determining participation in the SEA program, these cases are inapposite.

In addition, Plaintiffs argue that the "taint" of preferring Students of Color in the original selection criteria for the SEA program demonstrates the invidious discriminatory intent necessary to establish their claim. See Opp. at 10. In so doing, Plaintiffs suggest they have stated a claim because the School Board has the burden to remove that taint but has not done so. But the Supreme Court and the Fourth Circuit have explicitly rejected this position, and Plaintiffs' claim cannot rest on any unmet expectation that the School Board take steps to "purge the taint" of any prior action. See N.C. State Conf. of the NAACP v. Raymond, 981 F.3d 295, 304 (4th Cir. 2020) (citing Abbott v. Perez, 138 S. Ct. 2305 (2018)). Nor is Plaintiffs' assertion that a taint remains even supported by the facts alleged; the original SEA program criteria were not implemented and were removed from the LCPS website, and LCPS administrators communicated that "all students (white or otherwise) are more than welcome to potentially serve as ambassadors."[2] Compl., ¶¶ 38–39, 41.

Because Plaintiffs have not shown that the SEA program was established with invidious discriminatory intent, Count I must be dismissed.

---

Associated Gen. Contractors v. State ex rel. Div. of Admin., Office of State Purchasing, 669 So. 2d 1185, 1198 (La. 1996).

[2] Plaintiffs mischaracterize their own Complaint when they assert that the explicit racial classification was dropped "after facing an outcry from parents," Opp. at 9; the Complaint merely alleges that "the explicit racial discrimination in the SEA program was criticized." Compl., ¶ 37.

### B. Plaintiffs have not shown that the SEA program has an actual discriminatory impact.

Plaintiffs' Complaint also does not allege facts to show that the SEA program selection criteria have an actual discriminatory impact. See Mem. at 7–8. Rather, Plaintiffs argue they are not in possession of the facts necessary to state their claim and must be allowed to engage in discovery to develop their claim. See Opp. at 10–11. But a motion to dismiss is not based on what evidence the parties might present at trial, but whether the "complaint alone is legally sufficient to state a claim for which relief may be granted." Guyton v. United States, No. 8:18-cv-609, 2019 U.S Dist. LEXIS 146628, at *11 (D.S.C. Feb. 7, 2019) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)). The motion to dismiss procedure "streamlines litigation by dispensing with needless discovery and factfinding," Neitzke v. Williams, 490 U.S. 319, 326–327 (1989), and discovery "is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim." Porter v. Hamilton, No. 1:20-cv-203, 2021 U.S. Dist. LEXIS 73752, at *4 (E.D. Va. April 15, 2021) (quoting Kaylor v. Fields, 661 F.2d 1177, 1184 (8th Cir. 1981)). Indeed, as courts have noted, the purpose of a motion to dismiss is precisely "to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." See Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987); Havoco of America, Ltd. V. Shell Oil Co., 626 F.2d 549, 553 (7th Cir. 1980) (noting that "if the allegations of the complaint fail to establish the requisite elements of the cause of action, our requiring costly and time consuming discovery and trial work would represent an abdication of our judicial responsibility"). Denying a motion to dismiss on the grounds that plaintiffs claim to need discovery to develop the facts necessary to state their claim therefore vitiates the purpose of motions to dismiss in the first instance.

Because Plaintiffs have not alleged facts that show the SEA program has an actual discriminatory impact, Count I must be dismissed for this reason as well.

### II.  Plaintiffs have not alleged facts to support a First Amendment claim based on viewpoint discrimination.

In Count II of the Complaint, Plaintiffs assert that the SEA program violates the First Amendment because it discriminates based on viewpoint. See Compl., ¶¶ 82–91. Viewpoint discrimination "targets not subject matter, but particular views taken by speakers on a subject." Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 829, 115 S. Ct. 2510, 2516 (1995). Plaintiffs have not stated a claim for viewpoint discrimination for at least three reasons. First, as the School Board explained in its Memorandum, Plaintiffs have not alleged facts to show that any particular viewpoints have been targeted in connection with selecting students to participate in the SEA program. Mem. at 8–10. Second, in the alternative, even if having a "passion for social justice" is a cognizable viewpoint, the First Amendment does not provide any remedy for Plaintiffs in this context. And third, even if the First Amendment provided the appropriate framework to evaluate Plaintiffs' claim, Plaintiffs do not demonstrate that viewpoint discrimination is prohibited when applied to school-sponsored speech. As Plaintiffs have not stated a claim for viewpoint discrimination under the First Amendment, Count II must be dismissed.

### A.  Plaintiffs have not alleged any viewpoint that has been discriminated against.

In their Opposition, Plaintiffs persist in their unsupported assertion that having a "passion for social justice" is a cognizable viewpoint protected by the First Amendment. Opp. at 18–20. As the School Board explained in its Memorandum, however, having a "passion for social justice" is simply not a viewpoint. Mem. at 8–9. Although Plaintiffs argue that they have

alleged facts showing that social justice is a viewpoint, Plaintiffs tellingly cannot point to any specific allegations in the Complaint that support that claim. See Opp. at 20. The Complaint contains no allegations that students with any particular viewpoint are excluded from the SEA program because such viewpoints are incompatible with a "passion for social justice." See Complaint, generally; Opp. at 19. No allegations demonstrate what "LCPS's preferred viewpoint" is or support Plaintiffs' claim in the Opposition that students are expected to be "youthful social justice warriors." See Complaint, generally; Opp. at 19. None of the facts alleged in the Complaint support Plaintiffs' claim that the SEA selection criteria are a "viewpoint-check" at the admission gate to the SEA program. See Complaint, generally; Opp. at 19.

Plaintiffs also argue that they deserve the opportunity through discovery to show that "social justice" is a viewpoint. Opp. at 20. But, as explained in Section I(B) above, the viability of Plaintiffs claim now cannot be based on what they might or might not learn in discovery later. Plaintiffs have not alleged in their Complaint sufficient facts to state their claim, so their claim cannot survive a motion to dismiss.

> **B.     Even if Plaintiffs had alleged a viewpoint, a First Amendment claim is not the correct avenue for a remedy in this context.**

In the alternative, even if having a "passion for social justice" is a cognizable viewpoint, Plaintiffs have not stated a claim because a First Amendment viewpoint discrimination claim is not the proper avenue for Plaintiffs to seek a remedy. As the School Board explained in its Memorandum, the Equal Protection Clause, not the First Amendment, offers Plaintiffs the appropriate avenue through which they may seek relief. Mem. at 9–10 (citing Buxton v. Kurtinitis, 862 F.3d 423, 429–30 (4th Cir. 2017)).

Plaintiffs argue that the School Board's analogizing this case to Buxton is "flawed," Opp. at 17–18, but rather it is Plaintiffs' reading and application of Buxton to this case is flawed. In that case, Buxton, an applicant to a radiology therapy program at a public community college, alleged he was denied admission because he expressed religious beliefs during his interview. 862 F.3d at 424. In considering the appropriate framework to determine whether Buxton's speech was protected, the court looked to employment cases, public forum cases, and cases "where the government is providing a public service that by its nature requires evaluations of, and distinctions based upon, the content of speech." Id. at 427. The court found that employment cases were inapposite because Buxton was not a public employee or applying to be one. Id. The court then considered the public forum cases and noted that "the Supreme Court already has rejected efforts to force claims like Buxton's into the public forum framework" because being denied access to a selective educational program was not unconstitutional viewpoint-based restriction on speech. See id. at 428 (citing Locke v. Davey, 540 U.S. 712, 720 n.3 (2004)). The court found the appropriate comparison to being denied access to a competitive educational opportunity to be instances in which the government service being provided by its nature requires "evaluations of, and distinctions based upon, the content of speech." Id. (internal quotation marks omitted). Applying this framework, the court found that Buxton's speech in the interview was not protected, so no unconstitutional viewpoint discrimination had occurred. Id. at 430. In applying Buxton to this case, Plaintiffs ignore the standard the court applied to evaluating Buxton's claim and do not demonstrate how being denied admission[3] to the SEA program is not being denied access to a competitive educational opportunity.

---

[3] To be sure, Plaintiffs do not allege that any of their children were denied admission to the SEA program at all, let alone based on any viewpoints they may or may not hold. See Complaint, generally.

8

Plaintiffs' selective reliance on Buxton merely reflects their attempt to shoehorn this case into a forum analysis framework, where admission to the SEA program is not properly analyzed. As the School Board explained in its Memorandum, Buxton supplies the appropriate framework, as the SEA selection criteria that are the basis of Plaintiffs' claims are used to allocate a limited number of spots in the program among interested students. Mem. at 9–10. Because Plaintiffs' viewpoint discrimination claim is not appropriately considered under the First Amendment, Count II must be dismissed.

> **C.    The viewpoint neutrality requirement on which Plaintiffs rely does not apply to school-sponsored speech.**

Even if Plaintiffs allegations could be construed as stating a substantive viewpoint, and even if the First Amendment provided the appropriate framework to analyze their viewpoint discrimination claim—neither of which is true—Plaintiffs' claim must still fail because viewpoint-neutral regulation of speech is not required in a nonpublic forum for school-sponsored speech or activities.

Plaintiffs' implications that this issue is all but decided are inaccurate. See Opp. at 14–16. As the Fourth Circuit noted, "[n]either the Supreme Court nor this court has decided whether restrictions on school-sponsored student speech must be viewpoint neutral under Hazelwood, and other circuits are split on this question." Robertson v. Anderson Mill Elem. Sch., 989 F.3d 282, 290 (4th Cir. 2021). The Fourth Circuit case that Plaintiffs identify to imply any direction on the issue by the Fourth Circuit was decided 15 years prior to the court's decision in Robertson, which belies Plaintiffs' assertion that the Fourth Circuit is leaning any particular way on the issue. See Opp. at 15 (citing Child Evangelism Fellowship of Maryland, Inc. v. Montgomery County Public Schools, 457 F.3d 376 (4th Cir. 2006)). In addition, at least equally persuasive as the decisions on which Plaintiffs rely, see Opp. at 16, are the decisions of the First and Tenth

9

Circuits, specifically holding that Hazelwood does not require viewpoint neutral regulation. See Fleming v. Jefferson Cty. Sch. Dist., 298 F.3d 918 (10th Cir. 2002); Ward v. Hickey, 996 F.2d 448 (1st Cir. 1993). Accordingly, no controlling precedent supports Plaintiffs' position that schools must engage in only viewpoint-neutral regulation of speech in a school-sponsored, nonpublic forum.

For all the reasons stated above, Plaintiffs have not stated a claim for viewpoint discrimination under the First Amendment, so Count II must be dismissed.

### III. Plaintiffs have not alleged facts to support an Equal Protection claim based on viewpoint discrimination.

In Count III of the Complaint, Plaintiffs assert that the SEA program violates the Equal Protection Clause because it discriminates based on viewpoint. Compl., ¶¶ 92–96. Under the Equal Protection clause, a governmental action that does not impinge on a fundamental right is constitutionally permissible so long as it "rationally further[s] a legitimate state purpose." See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 54 (1983). A plaintiff must therefore "allege facts sufficient to overcome the presumption of rationality that applies to government classifications" to state a claim. Giarrantano v. Johnson, 521 F.3d 298, 303–04 (4th Cir. 2008) (quoting Wroblewski v. City of Washburn, 965 F.2d 452 (7th Cir. 1992)). Plaintiffs have failed to allege such facts, see Mem. at 10–11, so Count III must be dismissed.

In their Opposition, Plaintiffs argue that strict scrutiny applies to the SEA program because it implicates "free speech," which Plaintiffs assert is a fundamental right. Opp. at 21. There is no dispute that free speech is a fundamental right, but "free speech" is not at issue here. Rather, Plaintiffs assert their children are being denied access to a nonpublic forum, which does

not implicate any fundamental rights. See Perry, 460 U.S. 48, 54.[4] By attempting to shoehorn free speech rights into an Equal Protection claim, Plaintiffs merely restate their First Amendment viewpoint discrimination claim, "which fares no better in equal protection garb." See Perry, 460 U.S. at 54.

This case is like Perry, in which the Supreme Court held a school division did not violate the Equal Protection Clause when it granted access to its internal mail system to one teachers' union but not another. See 460 U.S. at 39, 54. In Perry, a collective-bargaining agreement between the school division and the designated teachers' union provided that only the designated teachers' union, and no other teachers' union, would have access to the school system's internal mail system. Id. at 38–39. A rival teachers' union sued to have equal access to the internal mail system. Id. 40–41. The Seventh Circuit held that the school district's giving access to its internal mail system to one union but not the other violated the Equal Protection clause. Id. at 41, 54. The Supreme Court reversed, however, and held that the internal mail system was a nonpublic forum, so the rival teachers' union did not have a fundamental right to access it. Id. at 48, 54. Accordingly, the classification applied by the school division as to which group could and could not access the internal mail system was subject only to rational basis review. Id. at 54. The Court went on to hold that the classification rationally furthered a legitimate purpose. Id.

Plaintiffs' claim is that their children were denied access to the SEA program. As in Perry, Plaintiffs seek access to a nonpublic forum[5] that they have no fundamental right to access.

---

[4] Accordingly, the case Plaintiffs cite in support of their assertion does not support their argument. See Opp. at 21. (citing Clark v. Jeter, 486 U.S. 456, 461 (1988)). Clark only notes that classifications affecting fundamental rights receive "the most exacting scrutiny" but does not identify "free speech" as a fundamental right or otherwise demonstrate that what Plaintiffs seek is a fundamental right. See Clark, 486 U.S. at 461.

[5] Plaintiffs acknowledge that the SEA program is a nonpublic forum. See Opp. at 14, 21.

11

Accordingly, any non-suspect classification that results in Plaintiffs' children being denied access to the forum is permissible if it rationally furthers a legitimate state purpose. As the School Board explained in its Memorandum, rather than "negate every conceivable basis which might support" the SEA program classification, see Giarratano, 521 F.3d at 303, the Complaint contains ample allegations explaining how the SEA program furthers the legitimate purposes of the School Board. See Mem. at 10–11. Accordingly, Plaintiffs have failed to state an Equal Protection claim on the basis of viewpoint discrimination, and Count III must be dismissed.

### IV. Plaintiffs lack standing to bring any claims related to the bias reporting form.

In Counts IV and V of the Complaint, Plaintiffs allege that the bias reporting form violates the Constitution because it chills speech through content-based restrictions and viewpoint discrimination. Compl., ¶¶ 97–112. To have standing to make these claims, Plaintiffs' must allege facts to show "a credible threat of enforcement" against them arising out of the bias reporting form. See Mem. at 11–12 (citing Abbott v. Pastides, 900 F.3d 160, 176 (4th Cir. 2018)). A credible threat of enforcement can be shown by an explicit threat of future discipline or an enforcement action in the past. See Abbott, 900 F.3d at 176, 177. An investigation that results in a dismissal of a complaint and no repercussions, however, does not indicate a credible threat of enforcement in the future. See id. at 177.

As the School Board explained in its Memorandum, Plaintiffs have not alleged facts to show there is a credible threat of enforcement against them. Mem. at 11–13. Plaintiffs have not alleged any discipline actually issued or consequences actually suffered through the bias reporting form implemented by LCPS. See Complaint, generally. Nor have Plaintiffs alleged any threat of future discipline made by any one in connection with reports made on the bias

12

reporting form.  Indeed, Plaintiffs have not alleged that any investigations have taken place at all. See Complaint, generally.

The facts that Plaintiffs identify to support their claim of a credible threat of enforcement do not demonstrate that one exists in this case.  For example, Plaintiffs allege that they "are aware that in other school settings nationwide," views their children allegedly hold have prompted bias incident reports.  Compl., ¶ 64; Opp. at 22.  But allegations that some student somewhere else reported a bias incident through some other system—with no corresponding allegations of any investigation or injury suffered through such allegation—do not show in any way that Plaintiffs' children face a credible threat of enforcement under this bias reporting form in this instance.  In addition, Plaintiffs argue they have alleged that the form exists and is used by students, and that referrals for investigation are taken seriously, see Opp. at 23–24, but these allegations do not demonstrate a credible threat of enforcement, which is the standard to which Plaintiffs' Complaint must be held.  Likewise, Plaintiffs' allegations that a bias reporting form that includes an option for investigatory referral exists and that students would fear speaking out because of the reporting form, see Opp. at 29, do not support the conclusion that there is any credible threat of enforcement through the bias reporting form.  In addition, Plaintiffs' vague and unsupported claims of fearing "public disclosure"—which they do not allege has been experienced by any students nor threatened by the School Board—are purely speculative and cannot establish standing.  See Abbott, 900 F.3d at 179.  Plaintiffs' allegations therefore simply do not meet the required standard to establish standing.[6]

---

[6] In justifying the lack of allegations in their Complaint regarding the credible threat of enforcement, Plaintiffs again advance the argument that they need to engage in discovery to articulate their claims.  See Opp. at 23.  As explained in Section I above, however, this argument does not support Plaintiffs' contention that their claim should survive a motion to dismiss.

Rather than squarely address the credible threat of enforcement missing from the allegations in the Complaint, Plaintiffs argue that the mere existence of the bias reporting form itself chills student speech sufficiently to violate the Constitution. Opp. at 24. This position is not supported by controlling case law, however. Plaintiffs rely primarily on decisions from the Fifth Circuit, Speech First, Inc. v. Fenves, 979 F.3d 319 (5th Cir. 2020), and the Sixth Circuit, Speech First, Inc. v. Schlissel, 939 F.3d 756 (6th Cir. 2019), to suggest that the existence of the reporting system in and of itself chills speech.[7] Opp. at 24–25. Not only are these opinions not controlling in this case, the systems considered there also can be distinguished from the bias reporting form at issue here. The courts in Fenves and Schlissel based their findings of an objective chill on the clear "plethora of potential sanctions" associated with the bias response systems, including actual and threatened disciplinary actions and referrals. See Fenves, 979 F.3d at 337–38; Schlissel, 939 F.3d at 765. In addition, the system in Fenves contained "overlapping policies," which meant that enforcement of one of the policies resulted in a credible threat of enforcement of the others. 979 F.3d at 335. In Schlissel, the system allowed the bias response team to make referrals, including to police, even without the consent of the reporting student. 939 F.3d at 765. In contrast to each of these, as explained in the School Board's Memorandum at 12–13, the bias reporting form used by LCPS does not have any sanctions that can be applied under the bias reporting form itself. There are no overlapping policies that, if violated, would somehow result in enforcement under the bias reporting form. Referrals are sent to the student's

---

Discovery is not available for Plaintiffs to make their case when their Complaint has failed to state a claim. See Porter v. Hamilton, No. 1:20-cv-203, 2021 U.S. Dist. LEXIS 73752, at *4 (E.D. Va. April 15, 2021).

[7] Plaintiffs also cite the dissenting opinion in Speech First, Inc. v. Killeen, 968 F.3d 628 (7th Cir. 2020), which is not even controlling in its own circuit, and likewise provides no aid to Plaintiffs here.

school administrators, not to police, and are made only if requested by the reporting student, who must then give up anonymity. In other words, the mere existence of the bias reporting form in this case does not show a credible threat of enforcement.[8]

Moreover, and contrary to Plaintiffs' assertion, Abbott demonstrates that Plaintiffs' have not alleged that their children face a credible threat of enforcement. The court in Abbott held that it is "clear" that "a threatened administrative inquiry" cannot establish standing "unless the process itself imposes some significant burden, independent of any ultimate sanction." 900 F.3d at 179. There are no allegations in the Complaint that show the investigation process itself imposes some significant burden on the students in question. See Complaint, generally. Plaintiffs attempt to show that only if the school has told students that their speech is acceptable does the threat of an investigation alone not establish standing. See Opp. at 27. This attempt misses the mark, however, because unlike the initial investigation in Abbott, there is no antecedent event that needs to be clarified in order to remove the credible threat of enforcement in this instance. Rather, Plaintiffs merely are attempting to make the argument, rejected in

---

[8] In opposition to this point, Plaintiffs cite to Bauer v. Shepard, 620 F.3d 704 (7th Cir. 2010), and ACLU v. Alvarez, 679 F.3d 583 (7th Cir. 2012), for the proposition that the "existence of a statute implies a threat to prosecute." See Opp. at 29. These cases do not support Plaintiffs' claim. Each case makes this observation in the unremarkable context of noting that pre-enforcement challenges can be proper under Article III. See Bauer, 620 F.3d at 708; Alvarez, 679 F.3d at 591 (quoting Bauer). In addition, Plaintiffs have not alleged any "statute" at issue here nor clear (or any) consequences connected with any "threat to prosecute," unlike in Bauer (removal from office) and Alvarez (criminal prosecution). Moreover, in Alvarez, the court found that a credible threat of prosecution because "[t]he State's Attorney has recently prosecuted similar violations and intends to continue doing so." 679 F.3d at 594. Thus, it was past enforcement and a threat of future enforcement that led the court to find standing, not the existence of the statute on its own. Plaintiffs have not made such allegations in this case.

15

Abbott, that the possibility of an investigation itself causes unconstitutional chill.[9] See Opp. at 27. As Plaintiffs have alleged only the existence of a possible investigation, without any threat of punishment or significant burden imposed by the investigation itself, Plaintiffs cannot establish standing. See Abbott 900 F.3d at 179.

As Plaintiffs have not established standing to bring Counts IV and V of the Complaint, those Counts must be dismissed.

**CONCLUSION**

For the reasons stated above, Plaintiffs' allegations and arguments do not demonstrate they have stated a claim for relief regarding the SEA program or that they have standing to bring claims regarding the bias reporting form. The School Board therefore requests that the Court dismiss Plaintiffs' claims, with prejudice, and award it such further relief as the Court deems appropriate.

    Respectfully submitted,

    LOUDOUN COUNTY SCHOOL BOARD

    By Counsel

---

[9] Plaintiffs' characterization of the School Board's position in their attempt to construe Abbott in their favor misconstrues the School Board's prior filings and is not supported by any allegations in the Complaint. Plaintiffs' quote from the School Board's Opposition to Plaintiffs' Motion for Preliminary Injunction, which in turn quotes language from Hazelwood that discusses the reasoning for and scope of permissible regulation of speech in the school setting. See Opp. at 27; ECF No. 17 at 14–15. This does not represent efforts of the School Board to "fight tooth-and-nail to retain its right to limit speech." See Opp. at 27. Nor have Plaintiffs anywhere alleged in the Complaint that the School Board has "adamantly maintained its right to include an investigation option on its bias incident form." See Opp. at 27; Complaint, generally.

/s/ Andrew P. Selman
Stacy L. Haney, Esq. (VSB 71054)
Andrew P. Selman, Esq. (VSB 91060)
HANEY PHINYOWATTANACHIP PLLC
11 S. 12th Street, Suite 100B
Richmond, VA 23219
Tel:  (804) 500-0310
Fax:  (804) 500-0309
shaney@haneyphinyo.com
aselman@haneyphinyo.com

Counsel for Loudoun County School Board

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October, 2021, I have electronically filed the foregoing REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT using the CM/ECF system, which will automatically send email notification of such filing to counsel of record as follows:

Jeffrey D. Jennings
Daniel R. Suhr
Reilly Stephens
Liberty Justice Center
208 South LaSalle Street, Suite 1690
Chicago, IL 60603
Tel: (312) 263-7668
Fax: (312) 263-7702
jjennings@libertyjusticecenter.org
dsuhr@libertyjusticecenter.org
rstephens@libertyjusticecenter.org

/s/ Andrew P. Selman
Stacy L. Haney, Esq. (VSB 71054)
Andrew P. Selman, Esq. (VSB 91060)
HANEY PHINYOWATTANACHIP PLLC
11 S. 12th Street, Suite 100B
Richmond, VA 23219
Tel:  (804) 500-0310
Fax:  (804) 500-0309
shaney@haneyphinyo.com
aselman@haneyphinyo.com

Counsel for Loudoun County School Board