**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

PATTI H. MENDERS, et al.,            )
                                     )
          Plaintiffs,                )
                                     )
v.                                   )            Case No. 1:21-cv-669-AJT-TCB
                                     )
LOUDOUN COUNTY SCHOOL BOARD,         )
                                     )
          Defendant.                 )

**DEFENDANT LOUDOUN COUNTY SCHOOL BOARD'S MEMORANDUM**
**IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

The Loudoun County School Board ("School Board") states as follows in opposition to

Plaintiffs' Motion for Summary Judgment [ECF No. 85] and Memorandum in Support thereof

("Plaintiffs' Memo in Support" or "Plaintiffs' Memo") [ECF No. 86].

**Introduction**

Plaintiffs have failed to identify any evidence to show that the School Board took any

concrete or overt action to enforce the now-defunct "Share, Speak Up, Speak Out: Bias

Reporting Form," or any other action for that matter against them.  Despite having the

opportunity to engage in full discovery, Plaintiffs still cannot point to anything other than their

subjective belief that they must self-censor to avoid punishment.  Due to this inescapable fact,

Plaintiffs' entire case rests on a "subjective chill" theory that is insufficient to establish a First

Amendment violation.  See, e.g., Rock for Life-UMBC v. Hrabowski, 411 F. App'x 541, 549 (4th

Cir. 2010) ("[A]llegations of subjective 'chill' are not an adequate substitute for a claim of

specific present objective harm.") (citation  omitted) (emphasis added); Abbott v. Pastides, 900

F.3d 168, 176 (4th Cir. 2018) ("[A] credible threat of enforcement is critical; without one, a

putative plaintiff can establish neither a realistic threat of legal sanction if he engages in the

1

speech in question, nor an objectively good reason for refraining from speaking and 'self-censoring' instead.") (citations omitted).

As demonstrated below, absent concrete or overt action by the School Board to demonstrate a "credible threat of enforcement," Plaintiffs cannot prevail on their two remaining Counts. And no matter how loudly Plaintiffs protest, there is no evidence that the School Board has ever taken any overt action to enforce anything about the Share, Speak Up, Speak Out form[1] or taken any other action against them, reducing their inflammatory but unsupported allegations to mere subjective self-censorship. The road now ends for Plaintiffs' purported role as free speech champions.[2]

### Standard of Review

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation and internal quotation marks omitted). "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." Id. (citation and internal quotation marks omitted).

"The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986). "The manner in which this showing can be made depends upon which party will bear the burden of persuasion on the challenged claim at trial." Id. "If the moving party

---

[1] Indeed there is nothing about the Share, Speak Up, Speak Out form to be "enforced."

[2] The irony of Plaintiffs' position in this lawsuit should not go unstated. Plaintiffs purport to defend free speech, yet they want this Court to strike down an avenue for speech.

will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." Id.; see also Alston v. DirecTV, Inc., 254 F. Supp. 3d 765, 782 (D.S.C. 2017) ("In moving for summary judgment, a movant . . . bearing the ultimate burden of proof on an issue, also bears the initial burden of coming forward with evidence or otherwise demonstrating that there is no genuine dispute as to every element necessary to prevail on the issue, even in the absence of evidence or argument by the non-movant." ).

## Argument

Although nowhere to be found in the First Amended Complaint, Plaintiffs now repeatedly characterize the two remaining Counts as an overbreadth case throughout their Memo, see generally Plaintiffs' Memo in Support, signaling evidently their intention to move forward with both (1) an as-applied claim based on a constitutional chill theory, and (2) a facial overbreadth claim.[3] Both claims fail because there is no evidence to establish that Plaintiffs' self-censorship was objectively reasonable,[4] and Plaintiffs' attempt to avoid this inescapable conclusion by citing inapplicable case law and mischaracterizing the record does not save their case. See, infra,

---

[3] While not entirely clear, it appears Plaintiffs are attempting to improperly merge these two claims into one, see, e.g., Plaintiffs' Memo in Support, at p. 1 ("This case is about whether the [School Board] can enforce overbroad raced-based policies that prevent students from voicing their personal views."). But the two, however, are distinct claims. See, e.g., Doe v. Cooper, 40 F. Supp. 3d 657, 677 (M.D.N.C. 2014) (citing Ferrell v. Burke, 449 F.3d 470, 498 (2d Cir. 2006)) ("[T]here is straightforward recent precedent suggesting that there is no such thing as an as-applied overbreadth challenge."); Hiers v. Bd. of Regents of the Univ. of N. Tex. Sys., No. 4:20-CV-321-SDJ, 2022 U.S. Dist. LEXIS 43617, at *45 (E.D. Tex. Mar. 11, 2022) (citing United States v. Stevens, 559 U.S. 460, 473 (2010)) ("An overbreadth claim is not an as-applied challenge; it is a species of facial attack.").

[4] The relevant inquiry for both an as-applied claim and a facial overbreadth claim is the same. Compare Abbott, 900 F.3d at 169 (citations omitted) (an as-applied constitutional theory is cognizable "only if it is 'objectively reasonable'—that is, if the challenged government action is 'likely to deter a person of ordinary firmness from the exercise of First Amendment rights.'") with id. at 176 (a facial overbreadth claim requires a sufficient showing of self-censorship, establishing a chilling effect on their free expression that is "objectively reasonable.").

Argument Section I.  In addition, Plaintiffs' facial overbreadth claim and their requests for injunctive and declaratory relief are moot.  See, infra, Argument Section II.  Finally, even if Plaintiffs' facial overbreadth claim is not moot, it nevertheless fails because Plaintiffs have not and cannot point to any facts in the record to establish such a claim.  See, infra, Argument Section III.

      **I.**      **Plaintiffs' as-applied claim based on a constitutional chill theory and facial over breadth claim fail for the same reasons.[5]**

          **A.**      **Plaintiffs' case rests entirely on "subjective chill," falling short of establishing a First Amendment violation.**

In Rock for Life-UMBC, the Fourth Circuit emphasized that "allegations of subjective 'chill' are not an adequate substitute for a claim of specific present objective harm."  411 F. App'x at 549 (citations omitted) (emphasis added).  For the chill to be objectively reasonable, there must be "some specific action on the part of the defendant in order for the litigant to demonstrate an injury-in-fact."  Id. (citing Morrison v. Bd. of Educ., 521 F.3d 602 (6th Cir. 2007)) (emphasis added).  In other words, some concrete action is required to nudge a plaintiff's subjective fear of enforcement into the objective realm.  This requirement is congruent with the holding in Abbott, where the Fourth Circuit stated that "a credible threat of enforcement is critical; without one, a putative plaintiff can establish neither a realistic threat of legal sanction if he engages in the speech in question, nor an objectively good reason for refraining from speaking and 'self-censoring' instead."  900 F.3d at 176 (citations omitted).

As the Fourt Circuit did in Rock for Life-UMBC, this Court should look to the Sixth Circuit's decision in Morrison for guidance when evaluating whether Plaintiffs' self-censorship is objectively reasonable or merely amounts to subjective chill.  411 F. App'x at 549 (citing

---

[5] See, supra, n. 4.

Morrison, 521 F.3d at 609, and holding that the alleged chill was not objectively reasonable because the university "never undertook a 'concrete act' to investigate or sanction the plaintiffs for violation of the code of conduct").  Indeed, the issue before the Morrison court fits neatly within the four corners of this case.  Specifically, the Morrison court framed the issue before it in the following way: "For purposes of this appeal, the only remaining claim we need to consider is [the plaintiff's] as-applied pre-enforcement challenge for nominal damages based on his allegations that the Board's [harassment and discrimination policy] 'chilled' his speech."  521, F.3d at 608.

In Morrison, the defendant school district adopted a policy that prohibited discrimination and harassment on the basis of "sexual orientation" among other protected characteristics.  Id. at 605–07.  The plaintiff, a student and a Christian, believed that homosexuality is a sin, and feared that he would be disciplined under the policy if he were to tell others that their conduct did not comport with his understanding of Christian morality.  Id.  The school district, however, never took any concrete action against the plaintiff.  Id.  In upholding the district court's grant of summary judgment for the school district, the Sixth Circuit highlighted that the plaintiff's self-censorship was based on "subjective chill," which the U.S. Supreme Court expressly rejected:

> The record is silent as to whether the school district threatened to punish or would have punished Morrison for protected speech in violation of its policy.  Morrison asks us, essentially, to find a justiciable injury where his own subjective apprehension counseled him to choose caution and where he assumed—solely on the basis of the Board's 2004-05 policies and without any specific action by the Board—that were he to speak, punishment would result.  We decline to do so. Absent a concrete act on the part of the Board, Morrison's allegations fall squarely within the ambit of "subjective chill" that the Supreme Court definitively rejected for standing purposes.

Id. at 609–10 (citing and discussing Laird Av. Tatum, 408 U.S. 1 (1972)).

This holding is congruent with other Fourth Circuit precedent.  For example, in Abbott, the Fourt Circuit recognized that a college student might reasonably chill his speech after receiving notice suggesting that he may be subject to an investigation and potential discipline. 900 F.3d at 168-71.  There, the plaintiffs, Abbott and two student organizations, were granted approval to hold a "free speech event" seemingly intended to offend others.  Id. at 165.  The university received complaints after the event, asserting a violation of the discrimination and harassment policy.  Id.  This prompted the university's Title IX coordinator to issue a letter to Abbott, referencing a "Notice of Charge," and directing him to contact the Title IX office to arrange a meeting.  Id.  The letter also stated that if the matter could not be resolved, an investigation would ensue.  Id.  Based on these facts, the Fourth Circuit concluded that the chill was objectively reasonable for the "brief time period" after the university took these overt actions, including sending a letter that references a "Notice of Charge," raising the prospect of an investigation, directing Abbott to a meeting, and prohibiting Abbott from speaking with others. Id. at 171.  The cornerstone of the holding, therefore, considered the overt steps the university took, suggesting an investigation and possible disciplinary action were forthcoming.

And just three months ago, in May 2023, the Fourth Circuit clarified that, in the context of a bias incident reporting policy, an overt enforcement action alone is insufficient to establish a claim of constitutional chill if the overt action has no connection to student discipline.  In Speech First, Inc. v. Sands, the Fourth Circuit found that self-censorship was not objectively reasonable even though Virginia Tech took overt actions to enforce its bias incident policy because those actions were devoid of a possibility of discipline.  69 F.4th 184, 189-93 (4th Cir. 2023).  In Sands, there was evidence establishing that the Bias Intervention and Response Team ("BIRT") extended an invitation to both the complainant and respondent to meet voluntarily to discuss the

complaint; and that while the BIRT lacked the authority to discipline, it may, like any other member of the Virginia Tech community, report a complaint as a code of conduct violation.  And, in fact, the BIRT made such reports.  Id. at 193-95.  Nevertheless, these actions, the court held, were insufficient for the plaintiff to show that there was a "credible threat of enforcement."  Id. at 195 (citing Abbott, 900 F.3d at 176).

In this case, Plaintiffs fail to provide any evidence of a single concrete or overt action taken against them by the School Board to enforce anything related to the Share, Speak Up, Speak Out form, much less in a way that would be connected to a possible disciplinary action. Unlike the plaintiff in Abbott, no LCPS students, including Plaintiffs, ever had any objectively reasonable basis to deter their speech because of the School Board's Share, Speak Up, Speak Out form.  No evidence shows that LCPS students were issued letters, called into meetings, or made to believe they had been charged with anything.  Plaintiffs cannot show that any of the university's procedures described in Abbott—or any similar procedures—were utilized by the School Board.  Moreover, Plaintiffs cannot show that any LCPS students had an experience even remotely similar to Abbott's.  None of the concrete actions present in Abbott that supported the Fourth Circuit's finding of an objectively reasonable deterrence are present in this case.  See also Morrison, 521 F.3d at 610 ("Absent concrete act on the part of the Board, Morrison's allegations fall squarely within the ambit of 'subjective chill' that the Supreme Court definitively rejected for standing purposes."); Sands, 69 F.4th at 195 (holding that even the overt actions the university took to enforce bias incident policy were insufficient to establish a "credible threat of

enforcement," because the those actions have no connection to the discipline process) (citing Abbott, 900 F.3d at 176).[6]

Instead of providing evidence of any action by the School Board that could support an objectively reasonable chill, Plaintiffs mischaracterize the facts and rely solely on their own subjective fear.  For example, Plaintiffs conflate "bias incidents" with discipline incidents, and misstate that "[t]here are multiple ways in which 'bias incidents' can be reported and ultimately investigated."  Plaintiffs Memo, at p.10.  In fact, there was only one designated way for a student to communicate a bias incident, and that was by submitting a Share, Speak Up, Speak Out form via the link provided by the LCPS Equity Office.  See School Board's Memorandum in Support of Motion for Summary Judgment ("School Board's Memo") [ECF No. 88], and Exhibit D attached thereto [ECF No. 88-4].  However, there were (and still are) multiple ways to communicate a categorically distinct discipline incident to a school administrator.  Declaration of Dr. Ashley F. Ellis, attached hereto as Exhibit A ("Ellis Decl."), at ¶ 10.  And one such way— during the brief time that the Share, Speak Up, Speak Out form was active—included the ability to indicate on the form if the student desired that the Equity Office forward the form to the student's school for review by an administrator.  See School Board's Memo and Exhibit D attached thereto [ECF No. 88-4].  But this is of no consequence because, like the BIRT in Sands, 69 F.4th at 193-95, the Office of Equity has no role in student discipline and is merely able to refer an incident for discipline like any other members of the school community.  See School Board's Memo and Exhibit C attached thereto [ECF No. 88-3], at ¶ 16.  Regardless, none of the

---

[6] Moreover, in Sands, the Fourth Circuit observed, in dicta, that the Seventh Circuit, in rejecting another challenge by Speech First, cited Abbott, holding that "'[i]t follows that if a mandatory meeting does not demonstrate a credible threat of enforcement, neither does an invitation to an optional one.'"  Id. at 196 (referencing Speech First v. Killeen, 968 F.3d 628, 640–41 (7th Cir. 2020).  In this case, there is no action at all—mandatory or optional—so it also follows, then, that there is even less of a chance for enforcement.

forms submitted to the Office of Equity resulted in any formal investigation or disciplinary action.  See School Board's Memo and Exhibit E attached thereto [ECF No. 88-3], at ¶ 11.

As the evidence demonstrates, the Share, Speak Up, Speak Out form was separate and distinct from the student discipline process.  See Action Plans to Combat Systemic Racism, attached hereto as Exhibit B ("Action Plans"), at LCSB 000412.  Both the purpose and the limits of the Share, Speak Up, Speak Out form were made obvious in communications to students and parents, as well as on the face of the form. See Plaintiffs' Memo and Exhibit D attached thereto [ECF No. 86-6]; see also School Board's Memo and Exhibit D attached thereto [ECF No. 88-4], Exhibit F [ECF No. 88-6].  Plaintiffs' subjective chill is based on nothing more than their own willful disregard of the words on the Form and the plain difference between bias incidents and discipline incidents.  Had Plaintiffs engaged with the Share, Speak Up, Speak Out form at all, or read any of the information that explained the form's purpose and function, they would have understood that the School Board was not taking any concrete or overt action against them—or anyone else—and that chilling their own speech was not objectively reasonable.  See Rock for Life-UMBC, 411 F. App'x at 549; Morrison, 521 F.3d at 609–10; Abbott, 900 F.3d at 168–71; Sands, 69 F.4th at 195.

For these reasons, no matter the theory—as applied or facial overbreadth—Count IV and Count V fail.

**B.    Plaintiffs' attempt to skirt <u>Abbott</u> and <u>Reyes</u> by relying on irrelevant case law does not save their case, and their conclusion regarding the applicability of <u>Abbott</u> and <u>Reyes</u> are erroneous.**

Because this case involves First Amendment claims based on a constitutional chill theory, this Court rightly directed the Parties to focus on Abbott and Reyes v. City of Lynchburg, 300 F.3d 449 (4th Cir. 2002), for the applicable analytical framework.  See Order of July 3, 2023 [ECF No. 77].  But rather than doing so, Plaintiffs cite cases that have no bearing on the relevant

analysis under Abbott and Reyes.  See, infra, Argument Section I.B.1.  Then, over halfway

through their Memo, Plaintiffs finally address "how or if the Abbott, … and Reyes, … decisions

apply to the analysis in this case."  See Plaintiffs' Memo at 14.  Plaintiffs' conclusion is that

Abbott supports their position, and that Reyes is inapposite.  See Plaintiffs' Memo, at p. 14.

Plaintiffs are wrong.  See, infra, Argument Sections I.B.2 and I.B.3.

> **1. Plaintiffs' reliance on irrelevant case law does not save their case.**

In their Memo, see Plaintiffs' Memo in Support, pp. 8–13, Plaintiffs cite cases that have

no bearing on whether their self-censorship was objectively reasonable under a constitutional

chill theory.  For example, Plaintiffs cite to dicta from an Eighth Circuit case, Crozier v. Westside

Cmty. Sch. Dist., 973 F.3d 882 (8th Cir. 2020), see Plaintiffs' Memo in Support, at p. 8, but the

court's comment in Crozier concerns a retaliation claim and has nothing to do with the issues

before this Court.  Similarly, Plaintiffs also cite to Child Evangelism Fellowship of Md., Inc. v.

Montgomery Cnty. Pub. Sch., 457 F.3d 376 (4th Cir. 2006), a viewpoint discrimination case that

does not involve a constitutional chill theory, and Lee v. Weisman, 505 U.S. 577 (1992), a

religious case, see Plaintiffs' Memo in Support, at pp. 8–9, but issues in those cases also have no

bearing on whether Plaintiffs' self-censorship was objectively reasonable.  Accord Lee, 505 U.S.

at 591 ("The First Amendment protects speech and religion by quite different mechanisms.").

Nor does Plaintiffs' reliance on Susan B. Anthony List v. Driehaus, 573 U.S. 149 (2014),

Bauer v. Shepard, 620 F.3d 704 (7th Cir. 2010), and ACLU v. Alvarez, 679 F.3d 583 (7th Cir.

2012), advance their claims.  See Plaintiffs' Memo in Support, at p. 9.  First, the Fourth Circuit

has recognized Susan B. Anthony List for the proposition that "an administrative processes may

be so onerous as to amount to sanction, and thus may be sufficient to confer First Amendment

standing," but the "'process itself [must] impose[] some significant burden, independent of any

ultimate sanction.'" <u>Sands</u>, 69 F.4th at 196 (citing <u>Susan B. Anthony List</u> and <u>Abbott</u>).  Here, Plaintiffs have not and cannot identify any occasion on which the Share, Speak Up, Speak Out form was implemented against them in such away to satisfy this standard, so <u>Susan B. Anthony List</u> is not applicable for the relevant inquiry in this case.  In fact, the Fourth Circuit in <u>Abbott</u>, distinguished <u>Susan B. Anthony List</u> by acknowledging that a "single and decidedly non-adversarial meeting with Abbott can[not] be compared to the full adjudicatory process at issue in <u>Susan B. Anthony List</u>," 900 F.3d at 173, and this case involves <u>no</u> meeting between Plaintiffs and anyone from the School Board whatsoever, adversarial or otherwise.

Moreover, Plaintiffs' citation to two Eighth Circuit cases, <u>Bauer</u> and <u>ACLU</u>, for the proposition that a mere "existence of a rule or policy 'implies a threat' to enforce that rule or policy if someone breaks it," does not advance their case either.  <u>See</u> Plaintiffs' Memo, at p. 9. First, there is nothing in either <u>Bauer</u> or <u>ACLU</u> to suggest a standard that is contrary to what Plaintiffs must meet in <u>Abbott</u>, and so for the reasons stated above, Plaintiffs have not and cannot establish the facts necessary to meet an objectively reasonable chill standard.  Moreover, the facts in <u>ACLU</u> are markedly different than the facts in this case.  In <u>ACLU</u>, a case involving a pre-enforcement challenge to an eavesdropping statute, the court observed that there was a credible threat of prosecution because the prosecutor actually acknowledged that the ACLU's proposed audio recording would in fact violate the statute and that the prosecutor also "has recently prosecuted similar violations and intends to continue doing so."  679 F.3d at 592–94. Here, there is no evidence to suggest that the School Board has any intention of subjecting Plaintiffs to any disciplinary action for the type of speech Plaintiffs have chosen to self-censor.

Finally, Plaintiffs' citation to <u>Tinker v. Des Moines Indep. Cmty. Sch. Dist.</u>, 393 U.S. 503 (1969), also is not relevant to the issues at hand.  Indeed, because Plaintiffs have not actually

partaken in any speech due to self-censorship, it is simply mere conjecture whether any such speech would or would not "'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school.'" Tinker, 393 U.S. at 505 (citation omitted).

At bottom, Plaintiffs extensive efforts to avoid the applicable standard in Abbott and Reyes gets them nowhere.  None of Plaintiffs' extraneous case citations cure their lack of evidence to support any concrete, overt chill related to the Share, Speak Up, Speak Out form. Nor do their citations substitute for Plaintiff's lack of evidence of any specified, intended acts of expression.

### 2.       Plaintiffs' analysis of Abbott is incorrect.

As noted above, the applicable standard is whether the School Board took any concrete or overt action that was "likely to deter a person of ordinary firmness from the exercise of First Amendment rights."[7] Abbott, 900 F.3d at 169.  This standard recognizes that a "chilling effect amounts to a cognizable First Amendment injury only if it is 'objectively reasonable.'" Abbott, 900 F.3d at 169.  In consideration of the standard in Abbott, the burden of production is on Plaintiffs to support their motion with credible evidence that would entitle them to a directed verdict if not controverted at trial.  Celotex Corp., 477 U.S. at 331.

Instead of offering evidence related to the standard in Abbott, Plaintiffs interweave multiple mischaracterizations of the School Board's Share, Speak Up, Speak Out form.  Plaintiffs first state that the School Board is "threatening to investigate students who would engage in speech that offends others."  See Plaintiffs' Memo, at p. 15 (emphasis original).  Plaintiffs then state that they "have every reason to believe that they could be investigated and punished for

---

[7] Moreover, as discussed in Argument Section I.A, Abbott supports the School Board's position in this case.

their speech."  See Plaintiffs' Memo, at p. 15.  Finally, Plaintiffs contend that the School Board's

"policies are still in effect, and the threat that LCSB may enforce them against Plaintiffs if they

say something LCSB deems politically incorrect constantly lingers."  See Plaintiffs' Memo, at p.

16.  But Plaintiffs never identify any source of proof to support any of the new and baseless

allegations they make.

### 3.    Plaintiffs' analysis of Reyes is incorrect.

Shifting their attention briefly and superficially to Reyes, Plaintiffs assert that "[n]one of

the legal issues that arose in Reyes exist here."  See Plaintiffs' Memo, at p. 17.  Again, Plaintiffs

are mistaken.  Both Reyes, and later Abbott, explain that any award of damages requires

evidence of a specific event or act of expression that was chilled.  Abbott, 900 F.3d at 169, 171

(describing the holding in Reyes).

In Reyes, the Fourth Circuit rejected a claim for damages based on past chill because the

plaintiff failed to establish that he was deterred from engaging in any specific intended act of

expression.  300 F.3d at 451 n.8.  The plaintiff in Reyes had participated in a protest without first

obtaining a parade permit from the city.  Id. at 451.  Several weeks after the protest, the plaintiff

was charged with violating the parade ordinance.  Id. at 451, 455 n.8.  The plaintiff then sued the

city asserting that his speech was chilled because he had "planned another protest but feared

arrest, criminal and/or civil prosecution and penalties under the parade ordinance."  Id. at 451–

52.  The only specific protest the plaintiff identified was a protest scheduled to take place several

weeks after he filed suit.  Id. at 455 n.8.   Before that protest occurred, however, the plaintiff was

found not guilty of violating the parade ordinance. Id.  The plaintiff was subsequently assured by

the city that the parade ordinance would not be enforced against him in the future.  Id.

Furthermore, prior to the scheduled protest, the parade ordinance was formally repealed by the

city.  Id.  The court found that the fear of prosecution related to the ordinance could not have

chilled the plaintiff's participation in the protest he identified in his complaint, which occurred

after the ordinance was repealed.  Id.  Although the court's holding in Reyes was more nuanced

than in Abbott, it appears that the court concluded the plaintiff's First Amendment claim was

"without merit" because the plaintiff did not identify any specific event or act of expression that

was chilled between the time of his arrest and the time the ordinance was repealed.  Id.; see also

Abbott, 900 F.3d at 169, 171 (describing the holding in Reyes).

   Like the plaintiffs in both Abbott and Reyes, Plaintiffs have not and cannot establish that

they were deterred from any specific, intended acts of expression.  Plaintiffs have not identified

any specific statements that they wanted to make, any events they wanted to attend, or any other

specific act of expression in which they wanted to engage.  Accordingly, like the plaintiffs in

Abbott and Reyes, Plaintiffs here have failed to establish a necessary element of their claim for

nominal damages.[8]

    **C.**    **Plaintiffs mischaracterize facts and fail to meet their initial evidentiary burden to support their claims.**

    **1.**    **The Share, Speak Up, Speak Out form—which is the sole basis of Plaintiffs' claims—does not constitute a "bias reporting system."**

   Plaintiffs attempt to reframe the School Board's now defunct Share, Speak Up, Speak

Out form as an ongoing "bias reporting *system*."  See Plaintiffs' Memo, at p. 18 (emphasis

original).  Plaintiffs also attempt to tie their claims to unidentified "LCSB's policies."  See

Plaintiffs' Memo, at p. 10.  Yet, Plaintiffs do not offer any evidence to support their

characterization of the Share, Speak Up, Speak Out form as either a "system," or "policies" of

---

[8] Moreover, as discussed below, see, infra, Argument Section III, Reyes is also relevant for the discussion on mootness, which Plaintiffs do not even attempt to distinguish.

any kind.  Rather, the form—which existed as a single internet link—was the means by which

bias incidents could be anonymously reported to the Office of Equity for the purposes of: (1)

providing information to be used at Share, Speak Up, Speak Out meetings; and (2) to inform next

steps for professional learning and support for school staff.  See School Board's Memo and

Exhibit D attached thereto [ECF No. 88-4], at LCSB 000535.  The Share, Speak Up, Speak Out

form was permitted to inform, but not supersede, LCPS policies and protocols for addressing

racial incidents, including but not limited to the Student Code of Conduct, Policy 7560

Professional Conduct, and the Protocol for Responding to Racial Slurs and Hate Speech in

Schools.  Action Plans, at LCSB 000412 (emphasis added).  Notwithstanding the existence or

submission of a Share, Speak Up, Speak Out form, students were directed to report all incidents

to a trusted adult, just as they normally would have.  See School Board's Memo and Exhibit E

attached thereto [ECF No. 88-6], at LCSB 000188; Plaintiffs' Memo and Exhibit D attached

thereto [ECF No. 86-6].  In other words, the Share, Speak Up, Speak Out form was its own

beginning and its own end, regarding bias incidents reported on the form.

> **2.      The School Board's Protocol for Responding to Racial Slurs
> and Hate Speech in Schools is not related to the Share, Speak
> Up, Speak Out form, and has no bearing on Plaintiffs' claims.**

Perhaps not fully understanding the School Board's Action Plans to Combat Systemic

Racism, Plaintiffs now attempt to fabricate a connection between the School Board's Share,

Speak Up, Speak Out form, and the LCPS Protocol for Responding to Racial Slurs and Hate

Speech in Schools ("Protocol").  See Plaintiffs' Memo, at p. 4.  No such connection exists.

The Protocol is set out in School Board Regulation 8030-3-REG, and requires actions to

be taken by a principal/assistant principal consistent with Va. Code § 22.1-279.6.  Ellis Decl.,

at ¶ 6.  Related to the Protocol, the School Board gathers data regarding racial slurs, hate speech,

and related incidents exclusively through reports made by school administrators, which data are submitted to the Office of Equity without student names or identification numbers included.  See Ellis Decl., at ¶ 11.  At the discretion of school administrators, and in accordance with the Student Code of Conduct, reports of racial slurs, hate speech, or related incidents are addressed as disciplinary incidents by school administrators.  See Ellis Decl., at ¶ 12.  The Office of Equity has no role in, and does not review, the disciplinary actions taken by school administrators related to racial slurs, hate speech, or related incidents documented pursuant to the Protocol.  See Ellis Decl., at ¶ 12.

While finalizing the Protocol was one step in the Action Plans to Combat Systemic Racism, the Protocol has always existed entirely separate from, and never subject to, the Share, Speak Up, Speak Out form.  See Action Plans, at LCSB 000401–402.  As noted above, the Action Plans to Combat Systemic Racism clearly state that the Share, Speak Up, Speak Out form was not permitted to supersede the Protocol.  See Action Plans, at LCSB 000412.  Because the Protocol is distinct from the Share, Speak Up, Speak Out form, and the form was the only mechanism by which "bias incidents" were reported, Plaintiffs' reference to the Protocol is irrelevant.  Regardless, Plaintiffs' attempts to bolster their claim by shifting focus to the Protocol does not save their case.  See, above, Argument Section I.

3.    **Plaintiffs' declarations are fatally defective, both in support of their Motion for Summary Judgment, and in opposition to the School Board's Motion for Summary Judgment.**

In support of, or in opposition to, a motion for summary judgment, "[t]he facts offered by an affidavit or sworn declaration must also be in the form of admissible evidence."  Pleasant v. Clarke, No. 3:19-CV-417, 2021 U.S. Dist. LEXIS 28796, at *4 (E.D. Va. Feb. 16, 2021) (citing Fed. R. Civ. P. 56(c)(4)).  Rule 56 states in the pertinent part: "An affidavit or declaration used to

support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. Proc. 56(c)(4) (emphasis added). Accordingly, "summary judgment [declarations] cannot be conclusory or based upon hearsay." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted). A declaration does not meet the requirements of Rule 56 in the absence of an affirmative showing of personal knowledge of specific facts, because such facts might well be based on nothing more than hearsay or intuition. EEOC v. Clay Printing Co., 955 F.2d 936, 945 n.9 (4th Cir. 1992).

The copy-and-paste declarations[9] of Menders, Mineo, and Jane Doe #2 are not admissible evidence regarding the purported "chilling" effect the School Board's Share, Speak Up, Speak Out form supposedly had on their children. None of the declarations explain how Menders, Mineo, or Jane Doe #2 know what their children's actual concerns were about sharing their views—whatever those views were. Although the declarations state that Menders, Mineo, and Jane Doe #2 were "aware of the 'Bias Incident Reporting System,'" the declarations fail to state that R.M., A.M., or Jane Doe #5 were aware of any concrete or overt action taken by the School Board against them, or anyone else.

Neither are the declarations of Menders, Mineo, and Jane Doe #2 admissible evidence regarding any specific intended acts of expression in which R.M., A.M, or Jane Doe #5 might have wanted to engage. None of the declarations identify any specific intended act of expression the children wanted to make, much less explain how Menders, Mineo, and Jane Doe #2 would know what their children's actual desires were related to what they wanted to say, when they wanted to say it, or how they wanted to say it.

---

[9] All three declarations are duplicative in paragraphs 10 and 12, which are the only paragraphs that relate to the relevant legal standard for Counts IV and V.

Notably, in responding to the School Board's interrogatories, Menders, Mineo, and Jane

Doe #2 failed to acknowledge ever speaking to their children about the claims they asserted.

When Menders, Mineo, and Jane Doe #2 were asked to state directly all facts that supported their

assertions regarding their children's wishes "to speak out on CRT, race, and gender identity, and

other controversial political issues within the LCPS community," they simply referred back to

their own declarations.  Menders Interrogatory Answers, attached as Exhibit C, at #7; Mineo

Interrogatory Answers, attached as Exhibit D, at #7; Jane Doe #2 Interrogatory Answers,

attached as Exhibit E, at #7.  Thus, even assuming that Menders, Mineo, and Jane Doe # 2 could

overcome a hearsay objection, they cannot testify regarding their children's desires and fears

because, according to their own sworn interrogatory responses, they never spoke to their children

about such things.

The declarations of Menders, Mineo, and Jane Doe #2 fail to constitute or identify

admissible evidence that meets the requirements of Rule 56.  There are no facts in the

declarations that demonstrate either Menders, Mineo, or Jane Doe #2 have any personal

knowledge of their children's views or concerns about anything.  The declarations facially

constitute hearsay, and represent—at most—the conclusory assumptions by Menders, Mineo,

and Jane Doe #2 regarding what R.M., A.M., and Jane Doe #5 think, want, and fear.

## II.    Plaintiffs' facial overbreadth claim and requests for injunctive and declaratory relief are moot.

Plaintiffs' facial overbreadth claim and requests for injunctive and declaratory relief

related to their claims in Counts IV and V are moot, and Plaintiffs arguments cannot salvage

them.  Contrary to Plaintiffs' assertion, the School Board's Share, Speak Up, Speak Out form

never constituted a "bias reporting system," and that form was discontinued over two years ago.

Plaintiffs try to argue that a "bias reporting system" currently exists, but the evidence they cite is

inaccurate, inadmissible, and fails to support their argument.  See, infra, Argument Section II.A.
Plaintiffs then try to introduce the voluntary cessation exception to the mootness doctrine, but it
is inapplicable in this case because Plaintiffs misstate Porter v. Clarke, 852 F.3d 358 (4th Cir.
2017), see, infra, Argument Section II.B, and rely authorities from the Fifth and Sixth Circuits,
which are not binding on this Court.  See, infra, Argument Section II.C.

A plaintiff's legally cognizable interest in injunctive or declaratory relief is not present if
the relief ordered would have no practical impact on the plaintiff's rights and would not redress
the injuries originally asserted.  See Reyes, 300 F.3d at 453 (concluding that a plaintiff's
overbreadth claim was moot because the challenged ordinance was repealed, and there was no
reasonable expectation that the ordinance would be reenacted) (citing Telco Communications,
Inc. v. Carbaugh, 885, F.2d 1225, 1231 (4th Cir. 1989)).  Furthermore, requests for injunctive
and declaratory relief against a school board related to its policies are generally mooted by the
graduation of plaintiff students.  See Herrera v. Finan, No. 16-1496 709 F. Appx. 741, 745 (4th
Cir. Oct. 4, 2017) (citing Mellen v. Bunting, 327 F.3d 355, 364 (4th Cir. 2003)); see also Bd. of
Sch. Comm'rs v. Jacobs, 420 U.S. 128, 129 (1975) (concluding that "it seems clear that a case or
controversy no longer exists between the named plaintiffs and the petitioners with respect to the
validity of the rules at issue").

As a preliminary matter, Plaintiffs concede that R.M. and A.M. have graduated, and are
no longer students enrolled in LCPS.  See Plaintiffs' Memo, at p. 17, n.3.  Plaintiffs offer the
assurance that "Jane Doe #5 is still enrolled in LCSP" as evidenced by the declaration of Jane
Doe #2, made on June 20, 2021.  See Plaintiffs' Memo, at p. 17, n.3.  To be clear, the issue of
injunctive and declaratory relief is mooted to at least R.M. and A.M., based on these plaintiffs no
longer attending LCPS.  Injunctive and declaratory relief only remains a possible live issue as to

Jane Doe #5. For the reasons set forth below, Plaintiffs' facial overbreadth claim and requests for injunctive and declaratory relief as to Counts IV and V are now moot and must be dismissed.[10]

**A.      The Share, Speak Up, Speak Out form which forms the basis of Counts IV and V never constituted a "bias reporting system" and is no longer in effect.**

The "Share, Speak Up, Speak Out" form that formed the entire basis of Counts IV and V was discontinued in the summer of 2021, and was never replaced. See School Board's Memo, Exhibit E [ECF No. 88-5], at ¶¶ 9–10; Ellis Decl., at ¶¶ 14. No other mechanism in furtherance of creating a bias reporting form has been considered or used since that time. See School Board's Memo, Exhibit E [ECF No. 88-5], at ¶12–13; Ellis Decl., ¶ 15. Plaintiffs do not have any cognizable interest in pursuing either declaratory relief or an injunction to enjoin the School Board from utilizing a form that it is not currently using, has not used for two years, and has no plans or intentions of using in the future.

**1.      The School Board's Share, Speak Up, Speak Out form never constituted a "bias reporting system."**

As explained above, in Section I.C.1., supra, Plaintiffs are foreclosed from arguing that their claims are not moot because School Board has not ceased enforcing a "bias reporting *system*." See Plaintiffs' Memo, at p. 18 (emphasis original). The simple existence of a link to a Share, Speak Up, Speak Out form did not constitute a "bias reporting system." Plaintiffs have offered nothing besides their conclusory assertion to the contrary.

---

[10] In their Memo in Support, Plaintiffs merely attempt to explain why their requests for injunctive and declaratory relief are NOT moot. However, Plaintiffs offer neither argument nor evidence that would entitle them to summary judgment. As noted in the School Board's Memo in Support, at p.9 n.6, Plaintiffs were unable to make the necessary showing to support their motion for preliminary injunction, and have developed no additional record evidence since then that would lead to a different result.

2.     **Plaintiffs' purported evidence to show that a "bias reporting system" currently exists is inadmissible and fails to support Plaintiffs' argument.**

Plaintiffs cite to an internet article, and argue that a "bias system" must still be in effect, because the "LCSB's Equity Committee claimed it had recorded 861 'incidents [allegedly] involving hate speech or racial slurs.'"  Memo, at 18.  Plaintiffs' reliance on this internet article is unavailing for two reasons.

First, the internet article to which Plaintiffs cite has not been included as an exhibit, and is merely linked in a footnote.  The article itself, and much of the contents within that article, constitute inadmissible hearsay, to which the School Board objects, and for which Plaintiffs can offer no exception.  Fed. R. Ev<u>Id</u>. 802; Fed. R. Civ. P. 56(c)(2).  Consequently, such evidence may not be used to support Plaintiffs' argument.

Second—and without waiving the School Board's objection to the admissibility of the article—the article simply does not support Plaintiffs' argument.  Nothing in the article indicates that data collected by the school system is in any way related to a "bias reporting system."  Completely independent of the Office of Equity, the School Board gathers data regarding racial slurs, hate speech, and related incidences through its Protocol for Responding to Racial Slurs and Hate Speech.  <u>See</u> Ellis Decl. at ¶ 9, 11.  This data is gathered exclusively through reports made by school administrators, and the information is then submitted to the Office of Equity without student names or identification numbers included. <u>See</u> Ellis Decl. at ¶ 11.  For these reasons, Plaintiffs' bald reference to a "system" is unavailing.

B.     **The voluntary cessation exception does not apply to preserve Plaintiffs' request for declaratory and injunctive relief because Plaintiffs' reliance on <u>Porter,</u> is misplaced.**

Plaintiffs cite <u>Porter</u> for the proposition that "Fourth Circuit precedent requires an unconditional and irrevocable agreement that prohibits [the government] from returning to the

challenged conduct." See Plaintiffs' Memo, at p. 18 (internal quotation marks omitted).
Plaintiffs misstate Porter.[11] As the court explained in Porter, an "unconditional or irrevocable"
agreement is an example of a way a defendant can satisfy its contention that the voluntary
cessation doctrine moots a plaintiff's claim. Id. at 364. The court, however, goes on—in the very
next sentence—to explain that it has also held "that a governmental entity's change of policy
renders a challenge moot when the governmental entity 'has not asserted its right to enforce the
challenged policy at any future time.'" Porter, 852 F.3d at 364 (quoting Telco Commc'ns, Inc.,
885 F.2d at 1231). Contrary to Plaintiffs' assertion, courts within the Fourth Circuit regularly
dismiss claims as moot without evidence of an "unconditional or irrevocable" agreement. See,
e.g., Grutzmacher v. Howard Cnty., 851 F.3d 332, 349 (4th Cir. 2017); Roberts v. Engelke, No.
7:20-CV-00484, 2022 U.S. Dist. LEXIS 44578, 15–16 (W.D. Va. Mar. 14, 2022); Sands, 2021
U.S. Dist. LEXIS 181057; Stone v. Trump, 400 F. Supp. 3d 317, 336–37 (D. Md. 2019); Cochran
v. Ballard, No. 2:17-CV-04312, 2019 U.S. Dist. LEXIS 95359, at *32 (S.D.W.V. May 8, 2019);
Michael T. v. Crouch, 344 F. Supp. 3d 856, 868 (S.D.W.V. 2018).

    Rather than relying on Plaintiffs' misstatement of Porter, this Court should apply a
straightforward standard announced in Telco Commc'ns, Inc., 885 F.2d at 1231. There, the
Fourth Circuit held that a court's jurisdiction may abate "if there is no reasonable expectation
that the alleged violation will recur and interim events have completely and irrevocably
eradicated the effects of the alleged violation." Telco Commc'ns, Inc., 885 F.2d at 1231 (citation
and internal quotation marks omitted); see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.
(TOC), Inc., 528 U.S. 167, 190 (2000) (stating that a defendant claiming that its voluntary

---

[11] Additionally, Porter involved an Eighth Amendment challenge related to the conditions of
confinement for inmates on Virginia's death row. 852 F.3d at 360. The applicability of a case
like Porter, therefore, requires context within the time-worn acknowledgment that "death is
different." Ring v. Arizona, 536 U.S. 584, 605–06 (2002).

cessation moots a case must show that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur").

Reyes also provides guidance on how such a standard can be applied.  In Reyes, the plaintiff sued the city seeking declaratory relief.  Id. at 452.  While the litigation was ongoing, the city repealed the parade ordinance.  Id. at 452.  Consequently, the district court found that the plaintiff's action for declaratory relief was moot.  Id. at 452.  On appeal, the Fourth Circuit affirmed, noting that "the repealed parade ordinance cannot now, if it ever did, reach any amount of constitutionally protected conduct."  Id. at 453.  The Fourth Circuit further observed that there was "no reasonable expectation that [the city] will reenact the ordinance."  Id. at 453 (citing Telco Commc'ns, Inc., 885 F.2d at 1231).

In this case, the School Board has offered the declaration of Lottie Spurlock—the Director of Equity at the time the Share, Speak Up, Speak Out form was in use—to demonstrate that the School Board voluntarily ceased using the form in summer 2021.  See School Board's Memo and Exhibit E attached thereto [ECF No. 88-5], at ¶ 9.  The Share, Speak Up, Speak Out form was discontinued because the responses being received were duplicative of issues already identified by the Office of Equity and contained information that was either off topic or lacked sufficient detail to permit meaningful discussions at Share, Speak Up, Speak Out sessions.  See School Board's Memo and Exhibit E attached thereto [ECF No. 88-5], at ¶ 8.  The School Board has further offered the declaration of Dr. Ashley F. Ellis—the Chief Academic Officer who oversees the Office of Equity—to demonstrate that the School Board has not and will not replace the Share, Speak Up, Speak Out form with any similar form or any other mechanism in the future.  See Ellis Decl., at ¶¶ 2, 3, 16.  Plaintiffs have offered no evidence to support their theory that the School Board would ever revisit implementation of a Share, Speak Up, Speak Out form

that it deemed ineffective, and voluntarily ceased using.  See e.g., Speech First, Inc. v. Kileen,

968 F.3d 628, 647 (7th Cir. 2020) ("[T]he merely theoretical possibility that the [School Board]

could decide to revisit the [form] at some remote point in the future without any evidence of an

intention to do so—is not enough to survive a mootness challenge.").  Nor do Plaintiffs point to

any evidence that the School Board has asserted its right to use the Share, Speak Up, Speak Out

form at any future time.

### C.   Non-binding authorities from other jurisdictions do not assist Plaintiffs' attempt to stave off a dismissal of their request for injunctive and declaratory relief as moot.

In a last-ditch effort to save their request for injunctive and declaratory relief, Plaintiffs

cite to cases from the Fifth and Sixth Circuits, which are not binding on this Court, and argue

that applying the standard from those cases would preserve this Court's jurisdiction.  See

Plaintiffs' Memo, at pp. 19–20 (citing Speech First, Inc. v. Fenves, 979 F.3d 319 (5th Cir. 2020)

and Speech First, Inc. v. Schlissel, 939 F.3d 756 (6th Cir. 2019)).[12]  As demonstrated below,

Plaintiffs' claims for injunctive and declaratory relief are moot, even by their own preferred

standard.

In Fenves, the Fifth Circuit analyzed facts related to a university's voluntary cessation of

policies that impacted student speech, but that were later amended.  979 F.3d at 327.  The

framework adopted by the Fifth Circuit was borrowed from a Sixth Circuit case, Schlissel, 939

F.3d at 756, and considered three factors: (1) a controlling statement of future intentions; (2) the

---

[12] That these cases are nonbinding on this Court should not go unnoticed.  Indeed, in Sands, the
Fourth Circuit questioned the validity of the Fifth and Sixth Circuits' analyses and conclusions
reached in Fenves and Schlissel.  See Sands, 69 F.4th at 197 ("The other appellate courts vacated
and remanded but only after seemingly ignoring the factual findings of the respective district
court.  The Fifth and Sixth Circuits never even mentioned the applicable standard for reviewing
facts found by the district court.  Neither court seemed to acknowledge the deference due those
findings.").

timing of the voluntary cessation; (2) and a continuing defense of the challenged policy.  <u>Fenves</u>,

979 F.3d at 328.  As demonstrated below, the School Board satisfies this standard.

### 1.    Controlling statement of future intentions.

The School Board has provided a controlling statement of future intentions regarding its

use of the Share, Speak Up, Speak Out form that is the subject of Counts IV and V of this

lawsuit.  Ellis Decl., at ¶ 2, 3, 16.  Reimplementation of the Share, Speak Up, Speak Out form

could not occur without Dr. Ellis's knowledge and approval.  Ellis Decl., at ¶ 16.  Accordingly,

Dr. Ellis's declaration that the School Board has no plans or intentions of ever using the Share,

Speak Up, Speak Out form again is a controlling statement of future intentions.

### 2.    Timing of voluntary cessation.

The School Board ceased using the Share, Speak Up, Speak Out form during the summer

of 2021.  <u>See</u> School Board's Memo and Exhibit E attached thereto [ECF No. 88-5], at ¶ 9.

During the brief time that the form was in use, the Director of Equity noted that responses

received on the form were "either duplicative of issues already identified by the Office of Equity,

contained information that was off topic, and/or contained insufficient detail to permit

meaningful discussion.  <u>See</u> School Board's Memo and Exhibit E attached thereto [ECF No. 88-

5], at ¶ 8.  In other words, the form did not work as intended.

Plaintiffs argue that the School Board's voluntary cessation from using the Share, Speak

Up, Speak Out form "is highly suspicious," and suggest that their initiation of this litigation was

the sole cause of the form's discontinuation.  <u>See</u> Plaintiffs' Memo, at p. 20.  However, Plaintiffs'

suspicion is incorrect.  Indeed, as noted above, the School Board has a legitimate, independent

reason <u>unrelated</u> to Plaintiffs' lawsuit for why it stopped using the form—it did not work as

intended.  <u>Cf.</u> <u>S.B. v. Bd. of Educ.</u>, 819 F.3d 69, 79 (4th Cir. 2016) (noting in the context of an

employment retaliation claim that, in the face of a convincing explanation, timing alone is insufficient to show causation).

Moreover, Plaintiffs also draw attention to the lapse of time between when the School Board ceased using the Share, Speak Up, Speak Out form, and when the Fourth Circuit issued its remand of this case.  See Plaintiffs' Memo, at p. 21.  But Plaintiffs are incorrect.  The School Board stopped using the form in June 2021, not immediately after the Fourth Circuit issued its remand of this case, evidently when Plaintiffs became aware of its cessation.  Ellis Decl., at ¶ 14. Regardless, as noted above, the School Board did not stop using the form because of the litigation, it stopped because it had a legitimate, independent reason for no longer using the form Id.

### 3.      Continuing defense of challenged policy.

Although the School Board is continuing to defend the constitutionality of the now-defunct Share, Speak Up, Speak Out form, as the Sixth Circuit acknowledged in Schlissel, whether the government "vigorously defends the constitutionality of its . . . program" is not dispositive to the mootness inquiry.  939 F.3d 756, 770 (6th Cir. 2019) (quoting Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1, 551 U.S. 701, 719 (2007)).  Moreover, the three-factor test advanced by Plaintiffs functions as a scale, rather than a checklist.  See Sands, 2021 U.S. Dist. LEXIS 181057, at *58 (concluding that although the plaintiff's timing was "not coincidental," the other two factors of the Fenves and Schlissel analysis weighed in the plaintiff's favor).  Here, as demonstrated above, because the School Board has satisfied overwhelmingly the other two factors, the weight of this factor is lessened, and voluntary cessation exception does not apply.

**D.      Plaintiffs' request for declaratory relief is moot for the same reasons that its request for injunctive relief is moot.**

In a footnote, Plaintiffs argue that although their claims may be moot as to their request for injunctive relief, they are entitled to a separate inquiry regarding their request for declaratory relief.  See Plaintiffs' Memo, at 17 n.3.  Plaintiffs make this argument even though in their immediately preceding citation sentence, Plaintiffs quote Mellen, 327 F.3d at 365, in which the Fourth Circuit recognized that the student plaintiffs' claims for declaratory and injunctive relief were moot because they had graduated.  See Plaintiffs' Memo, at p. 17 n.3.

Plaintiffs' attempt to parse their requests for equitable relief cannot escape the standard that renders both requests moot.  The relevant inquiry, as noted in a case that Plaintiffs cite, is whether there remains "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Inmates v. Owens, 561 F.2d 560, 562 (4th Cir. 1977).  "[C]ourts have generally found that it is not an appropriate exercise of the power conferred by the Declaratory Judgment Act to pronounce past actions illegal if the conduct is no longer ongoing."  Cochran, 2019 U.S. Dist. LEXIS 95359, at *26–27 (collecting cases).

Plaintiffs' claim for declaratory relief is moot for the same reason that their claim for injunctive relief is moot—because the Share, Speak Up, Speak Out form has not been utilized in over two years, and will not be used in the future.  See School Board's Memo and Exhibit E attached thereto [ECF No. 88-5], at ¶¶ 9, 12, 13; Ellis Decl., at ¶ 16.

**III.      Plaintiffs' attempt to assert a facial overbreadth claim fails because Plaintiffs have not pointed to any evidence in the record, nor can they, to support such a claim.**

Even if Plaintiffs were able to reach the merits on a facial overbreadth claim because the claim is not moot, which they cannot do, the claim still fails because there is no evidence in the

27

record to which Plaintiffs can point to meet the necessary standard to establish the claim.  In

Members of City Council v. Taxpayers for Vincent, the Supreme Court explained that a facial

overbreadth claim has its roots in Thornhill v. Alabama, 310 U.S. 88 (1940), a case in which the

Court "concluded that the very existence of some broadly written statutes may have such a

deterrent effect on free expression that they should be subject to challenge even by a party whose

own conduct may be unprotected."  466 U.S. 789, 798–99 (1984).  But striking a statute as

facially overbroad is disfavored because doing so is "manifestly [a] strong medicine."  Broadrick

v. Okla., 413 U.S. 601, 613 (1973).  Accordingly, "the overbreadth of a statute must not only be

real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."  Id. at

615.  Moreover,

> [t]he concept of "substantial overbreadth" is not readily reduced to an exact
> definition.  It is clear, however, that the mere fact that one can conceive of some
> impermissible applications of a statute is not sufficient to render it susceptible to an
> overbreadth challenge.  On the contrary, the requirement of substantial overbreadth
> stems from the underlying justification for the overbreadth exception itself -- the
> interest in preventing an invalid statute from inhibiting the speech of third parties
> who are not before the Court.
>
> * * *
>
> In short, there must be a realistic danger that the statute itself will significantly
> compromise recognized First Amendment protections of parties not before the
> Court for it to be facially challenged on overbreadth grounds.

Taxpayers for Vincent, 466 U.S. at 800–01 (n. 19 and citations omitted).

Plaintiffs have not and cannot identify any evidence to meet this standard.  See generally

Plaintiffs' Memo in Support.  Nor does Plaintiffs' reliance on Newsom v. Albemarle Cnty. Sch.

Bd., 354 F.3d 249 (4th Cir. 2003) save their case.  See Plaintiffs' Memo, at pp. 9–10.  The

plaintiff in Newsom, on a preliminary injunction, identified specific language in the school dress

code that was overbroad, and demonstrated that the dress code lacked "any cogent limiting

construction."  354 F.3d at 260.  Here, Plaintiffs fail to present any evidence that the Share,

Speak Up, Speak Out form is substantially overbroad, either according to its text or the actual fact of its brief use in spring of 2021, in its application to other students not before this Court. Accordingly, to the extent Plaintiffs are attempting to invoke a facial overbreadth claim, and further assuming that their claim is not moot, the claim still fails.

## **CONCLUSION**

Plaintiffs fail to produce any evidence that would entitle them to summary judgment.  As demonstrated above, and in the School Board's Memo in Support, the undisputed facts show that Plaintiffs lacked any concrete and objectively reasonable basis to chill their speech, and never provided any evidence to support a specific, intended act of expression that was deterred. Additionally, the declaratory and injunctive relief that Plaintiffs seek is moot.  Finally, Plaintiffs attempt to assert a facial overbreadth claim comes too late, and in any event, is completely unsupported by the evidence.

WHEREFORE, Defendant Loudoun County School Board respectfully requests that this Court enter an Order denying Plaintiffs' Motion for Summary Judgment on the claims asserted herein by Plaintiffs, and award it such further relief as the Court deems appropriate.

Respectfully submitted,

*/s/ R. Matthew Black*
Stacy L. Haney (VSB 71054)
Pakapon Phinyowattanachip (VSB 80799)
R. Matthew Black (VSB 94663)
HANEY PHINYOWATTANACHIP PLLC
9201 Arboretum Pkwy, Suite 160
Richmond, Virginia 23236
Tel: (804) 500-0310
Fax: (804) 500-0309
shaney@haneyphinyo.com
pakaponp@haneyphinyo.com
mblack@haneyphinyo.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of August, 2023, I have electronically filed the

foregoing using the Court's CM/ECF system, which will automatically send email notification of

such filing to counsel of record as follows:

> Daniel Suhr
> Reilly Stephens
> Emily Rae
> Anthony Tamburro
> LIBERTY JUSTICE CENTER
> 208 South LaSalle Street, Suite 1690
> Chicago, IL 60603
> Tel: (312) 263-7668
> Fax: (312) 263-7702
> dsuhr@libertyjusticecenter.org
> rstephens@libertyjusticecenter.org
> erae@libertyjusticecenter.org
> atamburro@setlifflaw.com
> *Counsel for Plaintiffs*

> /s/ *R. Matthew Black*
> Stacy L. Haney (VSB 71054)
> Pakapon Phinyowattanachip (VSB 80799)
> R. Matthew Black (VSB 94663)
> HANEY PHINYOWATTANACHIP PLLC
> 9201 Arboretum Pkwy, Suite 160
> Richmond, VA 23236
> Tel: (804) 500-0301
> Fax: (804) 500-0309
> shaney@haneyphinyo.com
> pakaponp@haneyphinyo.com
> mblack@haneyphinyo.com
> *Counsel for Loudoun County School Board*