IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PATTI H. MENDERS, *et al.*,                    )
                                               )
                    *Plaintiffs*,              )
                                               )
            v.                                 )        Civil Action No. 1:21-cv-669 (AJT/TCB)
                                               )
LOUDOUN COUNTY SCHOOL BOARD,                   )
                                               )
                    *Defendant*.               )
_____)

**MEMORANDUM OPINION AND ORDER**

In this First Amendment challenge to certain policies approved by the Loudon County

School Board, the parties have filed cross-motions for summary judgment, [Doc. No. 85], [Doc

No. 87], and in connection with their motion, Plaintiffs have filed a motion for judicial notice,

[Doc. No. 96]. Upon consideration of the motions, the memoranda submitted in support thereof

and in opposition thereto, the arguments of counsel at the hearing held on September 6, 2023, and

for the reasons stated below, Plaintiffs' motions, [Doc. No. 85], [Doc. No. 96], are **DENIED**;

Defendant Loudon County School Board's motion, [Doc. No. 87], is **GRANTED**; and this action

is **DISMISSED**.

## I.    BACKGROUND

### A.  Factual Background

Briefly summarized, the following facts are undisputed unless stated otherwise:

In 2019, the Loudoun County School Board ("LCSB," or, the "Board") commissioned a

systemic equity assessment for the entire school division. [Doc. No. 9-2] at 74. The assessment

identified areas for improvement regarding diversity, equity, and inclusion. *Id*. at 75. Guided by

those recommendations, LCSB developed action plans to combat systemic racism, one of which

provided for the creation of the Student Equity Ambassador ("SEA") program. *Id*. at 30. The SEA program selected "ambassador" students to participate in discussions about equity and to promote the voices of students of color. *Id*.; [Doc. No. 88-3] ¶ 4. These discussions were meant to allow Loudoun County Public Schools ("LCPS") to better understand the student experience and develop appropriate plans to ensure the safety and wellbeing of students. [Doc. No. 88-3] ¶ 14.

As part of that SEA program, a form titled "Share, Speak Up, Speak Out: Bias Reporting Form" ("*Share, Speak Up, Speak Out* form," or, the "form") was created to identify issues and generate discussion points at SEA meetings. *Id*. The *Share, Speak Up, Speak Out* form was disseminated to schools and principals for use on April 26, 2021. [Doc. No. 88-6]. The face of the *Share, Speak Up, Speak Out* form explains that "[t]he primary use of this form is for the Office of Equity to capture stories and incidents of bias in an anonymous manner." [Doc. No. 86-7] (*Share, Speak Up, Speak Out* form). It then asks "Would you like this particular incident investigated by the administrators at your school?" with the instruction that the submitting student mark one of the following three statements:

(1) "No, I do not want to report this to my school."

(2) "No, I have already reported this to my school."; or

(3) "Yes. If yes, please provide your name below[,]" advising that "[p]roviding your name here will allow the Office of Equity to submit your name to your school for investigation." *Id*.; *see also* [Doc. No. 88-3] ¶¶ 14, 16.

The Equity Office collected the forms, but never had authority to investigate any matters reported through the *Share, Speak Up, Speak Out* forms or to issue any discipline as a result of a reported incident. No disciplinary action was ever taken as a result of anything shared in the *Share, Speak Up, Speak Out* form. [Doc. No. 88-3] ¶¶ 14, 16.

Neither LCPS nor the Equity Office has utilized the *Share, Speak Up, Speak Out* form since summer of 2021, and LCSB submits there are no plans to reinstate or replace the form with a similar reporting form or any other mechanism. [Doc. No. 88-5] ⁋⁋ 12–13.

**B.  Procedural History**

Plaintiffs Patti Hidalgo Menders ("Menders"), Scott Mineo ("Mineo"), and Jane Doe No. 2 (collectively, "Plaintiffs") assert in their Amended Complaint, [Doc. No. 30], five claims on behalf of their minor children, R.M., A.M., and Jane Doe No. 5. Specifically, Counts I-III of the Amended Complaint relate to the SEA program, and Counts IV and V relate to the bias reporting system that was implemented in 2020 through the *Share, Speak Up, Speak Out* form. Defendant LCSB moved to dismiss the Amended Complaint in September 2021, [Doc. No. 37], and after briefing and oral argument, the Court granted the motion by order dated January 19, 2022, dismissing all five Counts of the Amended Complaint. [Doc. No. 52] Plaintiffs appealed. [Doc. No. 56].

In its decision dated April 14, 2023, the Fourth Circuit concluded that Plaintiffs had no standing to assert the claims in Counts I, II and III, all relating to the SEA program, because their children never expressed any interest in serving as SEAs. [Doc. No. 60] at 11–12 ("the parents here have not alleged facts that show their children were 'able and ready' to participate"). Accordingly, the Court of Appeals remanded with instructions to dismiss Counts I-III for lack of subject matter jurisdiction. *Id.* at 15.[1] However, the Count of Appeals further concluded that Plaintiffs alleged facts that made plausible a concrete injury sufficient to confer standing for the bias reporting system claims, Counts IV and V, *id.* at 14–15, and remanded the case for further consideration of those claims. *Id.* at 15–16. Those two remanded claims, Counts IV and V, relate to the Board's use of the *Share, Speak Up, Speak Out* form. Specifically, Plaintiffs claim that the

---

[1] By Order dated June 7, 2023, the Court, following remand, dismissed Counts I, II, and III.

form violates the First and Fourteenth Amendments because it chills speech through content-based speech restrictions (Count IV) and through viewpoint discrimination (Count V). Plaintiffs seek declaratory and injunctive relief as well as nominal damages and attorney's fees pursuant to 42 U.S.C. § 1988. [Doc. No. 30] ¶¶ 107, 112.

## II.    LEGAL STANDARD

The standard for granting summary judgment is satisfied if, after a review of the record, the Court finds that there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). There are no material facts in dispute "unless there is sufficient evidence favoring the nonmoving party." *Anderson*, 477 U.S. at 249. Sufficiency of the nonmoving party's evidence is evaluated by whether a reasonable juror could find in their favor by a preponderance of the evidence; thus, "the mere existence of a scintilla of evidence in support of the [party's] position will be insufficient." *Id*. at 252. And while the Court must resolve conflicting inferences from circumstantial evidence in favor of the nonmoving party, the review standard does not allow for the "distort[ion] of the plain meaning of words or [to] conveniently to read them out of context." *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 821–22 (4th Cir. 1995).

## III.    DISCUSSION

As the Fourth Circuit and sister circuits have recognized, "First Amendment parameters may be especially difficult to discern in the school context." *Abbott v. Pastides*, 900 F.3d 160, 174 (4th Cir. 2018) (collecting cases). Schools must balance their obligation to address serious discrimination and harassment harms against the First Amendment right of free speech, finding a balance that avoids "stifl[ing] debate, enforce[ing] dogma, or punish[ing] dissent." *Id*. at 180. Navigating that challenge is most fraught with constitutional issues when school administrators, including school boards, create policies that prohibit certain types of speech for the purpose of

protecting students from dignitary harms. Accordingly, such policies are subject to strict scrutiny. *Id.* at 169. Here, however, the *Share, Speak Up, Speak Out* form at issue does not purport to prohibit or punish certain types of speech; rather, as the name suggests, it facilitates the amplification of certain viewpoints, which Plaintiffs seek to challenge both facially and as applied.

Although the procedural posture of this case presents several legal issues that the Court addresses in turn, the remaining claims reflected in Counts IV and V center on the question of whether the government's sponsored amplification of certain speech creates cognizable injury to those who, because of that amplification, suppress their own speech. In assessing that issue, the Court first addresses the scope of the challenged conduct reflected in Counts IV and V, as that issue was raised by the Parties in summary judgment briefing and at oral argument. The Court then addresses the threshold issues of whether the claims are moot and whether Plaintiffs have proffered any evidence of concrete injury to support Article III standing.[2] Turning to the merits, the Court addresses whether Plaintiffs' children face credible threats of disciplinary or other adverse actions resulting from the amplification of certain types of speech content.  Finally, the Court addresses whether, in the absence of any evidence sufficient to establish such a credible threat, there can be an objectively reasonable chill, or other cognizable constitutional harm, from the selective amplification of speech alone.

---

[2] Although the Fourth Circuit held that Plaintiffs had standing to bring Counts IV and V based on the allegations in the Amended Complaint, each element of standing "must be supported…with the manner and degree of evidence required at the successive stages of the litigation." *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 226–27 (4th Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Accordingly, the Court now evaluates this jurisdictional issue, specifically the injury and redressability of Plaintiffs' claims, not based on the allegations of the Amended Complaint, but on the evidentiary record before the Court.

**A. Plaintiffs' Remaining Claims Relate to the *Share, Speak-up, Speak-Out* Form and Closely Related SEA Procedures**

In summary judgment briefing and at oral argument, Plaintiffs claimed for the first time that their constitutional challenge, as alleged in the Amended Complaint, is not limited to the withdrawn *Share, Speak-up, Speak-Out* form and closely related procedures. *See generally* [Doc. No. 86]; [Doc. No. 93]; [Doc. No. 95]. Plaintiffs contend that the withdrawn form was only part of a broader unconstitutional "Bias System," reflected in a variety of policies and procedures related generally to policing speech, including (1) school board policies existing before the equity assessment that was performed in 2019 and 2020, (2) portions of the student code of conduct, (3) the teachers' professional code of conduct, and (4) the protocol for responding to racial slurs and hate speech in school. As a result, they argue, the withdrawal of the *Share, Speak-up, Speak-Out* form does not make their constitutional challenges in Counts IV and V moot, as the LCSB contends. Conversely, Defendant LCSB argues that neither Plaintiffs' Amended Complaint nor the course of this litigation can be reasonably understood to challenge anything beyond the *Share, Speak-up, Speak-Out* form and related procedures, and that Plaintiffs' now-described "Bias System" is a reformulation and recharacterization of their claims in order to avoid dismissal for mootness. *See* [Doc. No. 97] at 1. The Court agrees.

In support of their position that the Amended Complaint presented the broader challenge they now rely on, Plaintiffs point to references in their Amended Complaint to a "system," but what is referenced as the "system" in their Amended Complaint is the "Bias *Incident Reporting* System," which is described in earlier briefing and the Amended Complaint as the reporting system comprised of the *Share, Speak-up, Speak-Out* form and related SEA procedures. *See, e.g.*, [Doc. No. 41] at 4 ("Alongside the SEA Program, LCPS also implemented the Bias Incident Reporting System. LCPS distributed a form to parents and students to 'capture incidents of bias in an anonymous manner.'"); [Doc. No. 30] ⁋ 100 ("[T]he government does not have permission to grant

6

a heckler's veto to any student *who files a report* based on a single incident of speech that the hearer found offensive") (emphasis added); *Id*. at ¶ 111 ("The 'bias incident' *reporting system* chills speech based on viewpoint given that the [SEAs] who will judge their peers' speech must hold certain viewpoints in order to secure their positions.") (emphasis added). The Amended Complaint nowhere ties the form or SEA program into a broader "system" other than by concluding that the mere existence of an entirely separate policy against bullying, LCPS Policy No. 8250, and a "protocol" for responding to racial slurs and hate speech, both of which apparently include disciplinary measures, means that the *Share, Speak-up, Speak-Out* form could similarly subject students to discipline. [Doc. No. 30] ¶ 56.[3]  In sum, nothing in the record supports Plaintiffs' claim that they were always challenging a broader "bias system."

The scope of conduct that Plaintiffs now purport to challenge also flies in the face of the substance of the appeal taken from the Court's order dismissing Counts IV and V and the Fourth Circuit's opinion remanding those Counts to this Court for further proceedings. In that regard, the Fourth Circuit, after reviewing the Parties' briefing and hearing argument on the LCSB actions challenged,

> vacate[ed] the district court's dismissal of the parents' claims that **the reporting system the LCPS implemented using the Share, Speak Up, Speak Out: Bias Reporting Form** violates the First and Fourteenth Amendments by chilling their children's speech through content-based restrictions and through viewpoint discrimination.

[Doc. No. 60] at 15 (emphasis added).

Finally, there is nothing in the record that would suggest that Plaintiffs' First Amendment challenge would, or could, be based on anything other than the *Share, Speak-up, Speak-Out* form and related procedures.  For example, there is nothing in the record to suggest that LCSB's policy

---

[3] As discussed with respect to the merits below, this gloss on the operation of the disciplinary process is unsupported by any evidence.

against "racial slurs and hate speech" incorporated in the Student Code of Conduct was applied in such an overbroad manner as to invade protected speech. Furthermore, most of the materials Plaintiffs have come to say comprise the "Bias System" do not, in fact, reflect LCSB-approved or adopted policies, but rather are presentations that were given to the Board at Board meetings with proposals and recommendations for combatting systemic racism. *See* [Doc. No. 86-3] at 2.[4]

Overall, Plaintiffs' attempt to recast its challenge as something far broader and more systemic than the *Share, Speak-up, Speak-Out* form and closely-related SEA procedures is contrary to their claim, as presented and adjudicated in this Court and the Fourth Circuit, and the Fourth Circuit's opinion and remand instructions. Accordingly, the Court will construe Counts IV and V as limited to challenging the *Share, Speak-up, Speak-Out* form and related SEA procedures.

**B. Plaintiffs Have No Article III Standing to Bring Counts IV and V**

*1. Plaintiffs' Facial Challenge is Moot*

To qualify for adjudication before an Article III court, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). An actual controversy ceases to exist when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225,

---

[4] For example, at oral argument, Plaintiffs repeatedly asserted that Exhibit A to the Plaintiffs' memorandum in support of their motion for summary judgment is a policy that is part of the "Bias System" that seeks to restrict speech in an overbroad manner. But Exhibit A is a PowerPoint presentation that was presented to the Board in June 2020. *See id.* The document states, on its face, that

> This detailed plan is designed to identify action steps and…operational opportunities that LCSB…*can take* to combat systemic racism….*This document is a fluid document* in which LCPS reserves the right to add or revise action steps based on progress monitoring data, current events, and climate survey data.

*Id.* at 1 (emphasis added). There is no indication from the face of the presentation, or from any other evidence presented by Plaintiffs, that LCSB adopted all of the recommendations proposed and made them official LCSB policy. While some of the contents of the presentation relate to the challenged form, there is no indication that the content Plaintiffs actually cite relates to any of the conduct originally challenged in Counts IV and V of the Amended Complaint.

1230 (4th Cir. 1989) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)) (internal quotations omitted). In the First Amendment context, restraints on speech challenged facially for overbreadth are generally mooted once the restraints have been removed, irrespective of the relief sought. *Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 551 (4th Cir. 2010) ("[A] facial challenge premised on overbreadth is necessarily forward-thinking…[so] [w]hen a facially overbroad regulation is subsequently narrowed within constitutional boundaries, the inherent threat of content-based discrimination becomes null.") (citing *Reyes v. City of Lynchburg*, 300 F.3d 449, 453 (4th Cir. 2002)); *cf. Am. Legion Post 7 of Durham, N.C. v. City of Durham*, 239 F.3d 601, 606 (4th Cir. 2001) (observing that the courts should not dismiss a case as moot if the court believes there is a likelihood of reenactment of a substantially similar law or policy).[5] However, "even permanent remedial measures will not moot the claim" if it is properly brought as an as applied claim relating to past conduct for nominal or compensatory damages. *Hrabowski*, 411 F. App'x at 550.

Here, as discussed above, Plaintiffs' constitutional challenge reflected in Counts IV and V is based on the *Share, Speak-up, Speak-Out* form and related SEA procedures.[6] The *Share, Speak-up, Speak-Out* form was withdrawn in summer 2021, and LCSB has stated, without contrary evidence, that it was withdrawn for reasons separate and apart from this litigation and that there is no intention for LCPS to use the form in the future. *See* [Doc. No. 97] at 6; *see also* [Doc. No. 94-1] (Declaration of Dr. Ashley F. Ellis, the School Board's Chief Academic Officer, who oversees the Office of Equity). Based on the record before the Court, there is no longer a "live" controversy

---

[5] The Fourth Circuit has explicitly stated that while government defendants carry the same burden in establishing mootness under the voluntary cessation doctrine as in other contexts, *Long v. Pekoske*, 38 F.4th 417, 425 (4th Cir. 2022), affirmative governmental assurances are sufficient in most contexts to moot a claim. *See id.* (citing *Grutzmacher v. Howard Cnty.*, 851 F.3d 332, 349 (4th Cir. 2017)). An irrevocable act or agreement is not required, as Plaintiffs contend. *See* [Doc. No. 86] at 19.

[6] The Amended Complaint appears to allege as-applied claims (*i.e.*, claims for damages); however, Plaintiffs stated in their briefing that the challenge is "on First Amendment overbreadth grounds," [Doc. No. 86] at 6. At oral argument, Plaintiffs' counsel stated that Plaintiffs are asserting *both* facial overbreadth and as-applied claims.

about the form and related procedures, or any likelihood that LCSB will renew its use of the form.

*Reyes*, 300 F.3d at 453; *Am. Legion Post 7*, 239 F.3d at 606. For that reason, Plaintiffs' facial

challenge is plainly moot. *Hrabowski*, 411 F. App'x at 551; *see also Reyes*, 300 F.3d at 453.[7]

> 2. *Plaintiffs' Proffer No Evidence of Injury for the As-Applied Challenge*

Plaintiffs also lack standing for their as-applied claims because Plaintiffs have failed to

proffer any evidence of a past concrete injury, and therefore would not be entitled to pursue

nominal damages, the only relief that could otherwise preserve their challenge. *See Hrabowski*,

411 F. App'x at 549; *see also Reyes*, 300 F.3d at 455. In *Hrabowski*, after addressing the facial

overbreadth claims, the Fourth Circuit considered whether plaintiffs could recover nominal

damages with respect to their as-applied claims based on two separate University of Maryland

policies. The Court of Appeals held that the plaintiffs could pursue nominal damages for the claim

based on the University's facilities-use policy because the policy had in fact been invoked by

administrators to restrict the plaintiffs from displaying anti-abortion posters in certain areas. *Id*. at

550–51. However, consistent with its view that the justiciability issue was limited to whether

impermissible content-based discrimination did in fact occur, *id*., the Fourth Circuit further held

that plaintiffs could *not* pursue an as-applied claim for nominal damages for the alleged

unconstitutionality of the sexual harassment policy because the policy had never been applied to

them, even though they were subject to it. *Id*. at 549–50 ("[P]laintiffs assert standing to sue for

monetary damages on the theory that [the] mention of the [policy] caused them to chill their own

speech….However, the plaintiffs may not assert claims for damages against a speech policy that

was never actually applied to them."). Accordingly, as in *Hrabowski*, without any evidence of past

injury, Plaintiffs' do not have standing to pursue their as-applied claims for nominal damages.[8]

---

[7] Plaintiffs' counsel also conceded at oral argument that the claims are moot as to Menders and Mineo because their children are no longer enrolled in LCPS.

[8] Although Plaintiffs here, unlike the plaintiffs in *Hrabowski*, established Article III standing at the motion to dismiss stage based on the allegations in the Amended Complaint, *see Menders v. Loudoun Cnty. Sch. Bd.*, 65 F.4th 157, 165

### C. Plaintiffs' As-Applied Claims Fail on the Merits[9]

#### 1. *Plaintiffs' As-Applied Claim of Chilled Speech Due to Disciplinary Threat Is Unsupported by Evidence*

To bring a claim for chilled speech, "a plaintiff must at least show that [she] has suffered an injury or threat of injury that is credible, not imaginary or speculative." *Speech First, Inc. v. Sands*, 69 F.4th 184, 197 (4th Cir. 2023) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, (1979)). As such, a "chilling effect amounts to a cognizable First Amendment injury only if it is objectively reasonable." *Abbott*, 900 F.3d at 169. "A credible threat of enforcement is critical; without one, a putative plaintiff can establish neither a realistic threat of legal sanction if he engages in the speech in question, nor an objectively good reason for refraining from speaking and self-censoring instead." *S.C. Freedom Caucus v. Jordan*, 2023 WL 4010391, at *7 (D.S.C. June 13, 2023) (citing *Abbott*, 900 F.3d at 176). Threat of enforcement, therefore, cannot be manufactured by inflicting self-censorship "based on fears of hypothetical future harm that is not certainly impending." *Id.* (quoting *Am. Fed'n of Gov't Emps. v. Off. of Special Couns.*, 1 F.4th 180, 187 (4th Cir. 2021)).

There is no evidence in the record that Plaintiffs' children would have been subjected to any disciplinary action or other sanction by LCPS if the specific speech that Plaintiffs say was chilled had been reported on the *Share, Speak-up, Speak-Out* form. Plaintiffs argue that the mere existence of the rule or the policy is a sufficient credible threat of enforcement based on, what the Plaintiffs claim, their children wanted to say.  But the "policies" themselves are insufficient to establish the credible threat of a sanction necessary for Plaintiffs' as-applied challenge to succeed,

---

(4th Cir. 2023), as discussed in the merits analysis below, Plaintiffs have not since proffered any evidence to support their allegations of injury, and therefore do not have standing at this stage in the proceedings. *Lujan*, 504 U.S. at 561; *Overbey*, 930 F.3d at 226–27.

[9] Because the merits inquiry for the as-applied claims is centered around whether there is evidence of injury, the standing/jurisdictional issue fully overlaps with the merits analysis. As such, the Court reaches the merits on the as-applied claims to further support its conclusion on standing and to allow for a fulsome review on appeal.

because there is nothing on the face of the form, or in communications about the form, that indicates that a report made using the form could have led to student discipline. Specifically, the form itself states by way of introduction that "[s]tories of bias shared through this platform will be used in an *anonymous* manner for the Share, Speak Up, Speak Out sessions with Student Equity Ambassadors." [Doc. No. 86-7] at 2 (emphasis added). The form further states that "[t]his process provides information to LCPS leadership (specifically the Equity Office) that will be used for the *Share, Speak Up, Speak Out* sessions, as well as inform next steps for professional learning and support for school staff." *Id*. Finally, the form states that a student can leave their name if they wish for the Office of Equity "to submit *your* name to your school for investigation." *Id*. at 3 (emphasis added).

The form does not sufficiently establish a credible threat of sanction against a student whose speech might have been reported using the form. First, according to its stated purpose, the form is intended serve as a tool to collect information for fostering discussion and learning, not for discipline. *See id*. at 1. Plaintiffs do not challenge this stated purpose as pretextual, and there is no evidence in the record that it is pretextual. Second, nowhere on the form is a student prompted to report the name of the speaker involved in the incident reported, and the form reiterates that the information will be used in an anonymous manner. *Id*. at 1–3. Third, the provision regarding the optional investigation indicates that the *reporting student* will take part in the investigation, not necessarily the speaker. *Id*. at 3. Fourth, even assuming a follow-on investigation could eventually involve the speaker, there is no indication that the form amends, incorporates, or supersedes the existing student code of conduct and disciplinary structure; the form does not create new substantive bases for student discipline. *See id*. at 1–3. As such, a reasonable person would understand that incidents reported through the form would not portend disciplinary action.

In sum, Plaintiffs have presented no evidence of a threat of LCPS discipline or actual sanction resulting from a bias incident report, and therefore the threat that they say chilled their speech is not credible. *Sands*, 69 F.4th at 192 (finding no injury in fact where the policy challenged by the plaintiff did not "proscribe anything at all"); *cf. Abbott*, 900 F.3d at165 (finding that the receipt of a personal notice of investigation for engaging in First Amendment activity was a credible threat that existed until it was made clear the student would not be subjected to discipline).

### 2. *Plaintiffs' As-Applied Claim of Chilled Speech Cannot be Supported by Selective Amplification*

In Count V, Plaintiffs assert a theory of liability similar to the theory raised by the plaintiff in *Sands*. Specifically, and as the Amended Complaint makes clear, Plaintiffs' concerns about the *Share, Speak Up, Speak Out* form largely relate to the threat of *social* consequences they believe that they will experience as a result of LCPS's selective amplification of their speech:

> [T]he views of the Plaintiffs and their children on these subjects are often not shared *by other residents or young people in Loudoun County*. Indeed, when others have shared views similar to the Plaintiffs and their children on CRT, race, gender identity and other controversial political issues, that speech has prompted vitriolic, threatening, and persecutorial responses *from others in Loudon County*, including within the LCPS community.

[Doc. No. 30] ▐ 63 (emphasis added).

> Plaintiffs are concerned that if their students share their views about political or social issues, including those touching on CRT, religion, race, human sexuality, and other controversial political issues, they will be reported and investigated….They fear such a report, investigation, [sic] public disclosure, *could negatively impact their students' standing in the school community* and ruin their college or career prospects.

*Id*. at ▐ 65 (emphasis added). Although Plaintiffs have not identified any evidence that they were subject to a credible threat of disciplinary action or sanction by LCPS, Plaintiffs contend, in substance, that this selective amplification is nevertheless unconstitutional differential treatment based on viewpoint because the differential treatment itself has a coercive social effect that chills

13

speech. *Id*. at ¶ 99.[10] But the First Amendment protects speech from governmental suppression, not the perceived need by someone for self-imposed restraints on speech in order to avoid the opprobrium of their peers.

The Fourth Circuit has considered a bias reporting system far more intrusive and potentially "chilling" than the form in this case.[11] In *Sands*, Speech First, an organization committed to protecting the First Amendment rights of college students, challenged a Bias Policy adopted by Virginia Polytechnic Institute ("Virginia Tech," or the "University") that defined  bias incidents as "expressions against a person or group because of the persons or groups age, color, disability, gender (including pregnancy), gender identity, gender expression, genetic information, national origin, political affiliation, race, religion, sexual orientation, veteran status, or any other basis protected by law." *Id.* at 188. The reporting system was publicized through a "See something? Say something!" campaign that encouraged students to report incidents through a number of online platforms. *Id*. Any reported violations of the Bias Policy were reported to a panel of University administrator representatives from a variety of campus organizations, known as the Bias Intervention and Response Team, or "BIRT." *Id.* BIRT investigated the reported incidents to determine whether to engage the students—the reporting student *and* the student whose speech was at issue—in a voluntary conversation facilitated by the Office of the Dean of Students. *Id*. at 189. The panel had no disciplinary authority. *Id.* The Court of Appeals rejected Speech First's argument that, notwithstanding the absence of evidence of potential discipline, the reporting system itself could have had a "coercive effect" sufficient to establish a cognizable First

---

[10] Plaintiffs do not contend that the LCSB's policy of amplifying certain speech through the *Share, Speak Up, Speak Out* form and related procedures fails rational basis review. Instead, Plaintiffs argue that (1) disciplinary action is implied by the existence of a reporting form and (2) possible social consequences resulting from the reporting of the incidents are sufficiently coercive to establish the credible threat necessary for an objectively reasonable claim of chilled speech.

[11] How the reporting system in *Sands* could chill speech was discussed at length in Judge Wilkinson's dissent. *Sands*, 69 F.4th at 203–23.

Amendment injury. *Id*. at 193 (distinguishing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)). The Fourth Circuit explained that unlike the commission at issue in *Bantam Books*, there was no evidence in the record that students whose speech was reported felt obligated to attend the conversations arranged by the panel, indicating that participation was in fact voluntary, not coerced. *Id*. at 194.

Like the Virginia Tech bias reporting system in *Sands*, the *Share, Speak Up, Speak Out* form relied on students to report what they viewed as a bias incident for the purpose of fostering educational opportunities about bias. In that regard, the LCSB form, like the Virginia Tech reporting system, did not "proscribe anything at all," *id*. at 193, nor did it tie into a disciplinary system. *See* [Doc. No. 86-7]; *see also* [Doc. No. 88-3]. *Unlike* the Virginia Tech bias reporting system, however, the *Share, Speak Up, Speak Out* form was not even intended to target the speaker of the reported speech for the educational opportunity; rather, the educational opportunity here was for LCPS *staff* to learn about the experiences of students *who reported the incidents,* and to use them as subjects for discussions at the SEA forums. *See id.* Critically, there is no evidence in the record that a report made through the *Share, Speak Up, Speak Out* form ever involved the speaker of the speech reported in any kind of conversation, investigation, or discipline. Indeed, the coercion complained of in *Sands*—that students were threatened with a (voluntary) conversation with school administrators about their speech—was not a process even contemplated by the form and related SEA procedures. *See id*. *Sands* makes clear that the *Share, Speak Up, Speak Out* form and related procedures are themselves not sufficiently coercive to give rise to an objectively reasonable claim of chilled speech, as Plaintiffs claim.[12]

---

[12] Notably, the Fourth Circuit went even further in *Abbott* by finding that a *mandatory* meeting with a University of South Carolina administrative official about reported speech did not, on its own, create a coercive effect or burden sufficient to establish a "credible threat" for a claim of chilled speech. *Abbott*, 900 F.3d at 169, 172–74 (distinguishing the meeting from, *e.g*., the adversarial probable cause hearing at issue in *Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 475 (6th Cir. 2016)). Rather, the Court of Appeals found that the "notice of charge" and prospect of an official investigation—separate and apart from the initial meeting itself—could have given rise to an objectively reasonable

For the above reasons, Plaintiffs have failed to proffer evidence that when viewed most favorably to them, establish that Plaintiffs' children suffered a concrete injury sufficient to establish Article III standing or an objectively reasonable chill.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiffs' motion for summary judgment [Doc. No. 85] be, and the same hereby is, **DENIED** as to Counts IV and V; and it is further

ORDERED that LCSB's motion for summary judgment [Doc. No. 87] be, and the same hereby is, **GRANTED** as to Counts IV and V; and this action is **DISMISSED**; and it is further

ORDERED that Plaintiffs' motion for judicial notice [Doc. No. 96] be, and the same hereby is, **DENIED** as moot, and, alternatively, irrelevant.

The Clerk is directed to forward copies of this Order to all counsel of record.

Alexandria, Virginia
October 31, 2023

Anthony J. Trenga
Senior U.S. District Judge

---

chill, had the students identified specific acts of expression that they were deterred from engaging in during that limited timeframe. *Id*. at 171–73.